455 So.2d 373 (1984)
Dean FORSBERG and Walter Freeman, Appellants,
v.
The HOUSING AUTHORITY OF the CITY OF MIAMI BEACH and Murray Gilman, Executive Director, Appellees.
No. 54623.
Supreme Court of Florida.
August 30, 1984.
Lester C. Wisotsky, Legal Services of Greater Miami, Inc., Miami, for appellants.
Jim Smith, Atty. Gen., and Mitchell D. Franks, Chief Trial Counsel, Tallahassee, and John A. Ritter, City Atty., and Thomas M. Pflaum, Asst. City Atty., Miami Beach, for appellees.
PER CURIAM.
Dean Forsberg and Walter Freeman, tenants in public housing operated by the Miami Beach Housing Authority, filed a class action seeking to enjoin the housing authority from allowing public access to information provided by public housing tenants and prospective tenants. The circuit court granted the housing authority's motion to dismiss, finding that chapter 119, Florida Statutes (1977), violated neither article I, section 2 of the Florida Constitution nor the first, fourth, fifth, ninth, or fourteenth amendments to the federal constitution and that the complaint failed to state a cause of action. Forsberg and Freeman appealed *374 the dismissal prior to the 1980 jurisdictional amendment, and we have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972).
We agree with the circuit court. Florida's stated policy is that public records are open for personal inspection. § 119.01. The housing authority is an agency whose records are public. § 119.011. This case, therefore, deals solely with access to public records.
While certain records are statutorily exempted from the public's right to inspect, section 119.07, our examination of the statutes has brought to light no exemption pertaining to the records involved in this appeal. See Rose v. D'Alessandro, 380 So.2d 419 (Fla. 1980); Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979). There is, likewise, no state constitutional right of privacy which would shield these records. Prior to the addition of article I, section 23 to the state constitution, this Court had refused to find a general right of disclosural privacy provided for in that document. Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633 (Fla. 1980). Moreover, adoption of the privacy amendment offers no relief in this case because section 23 specifically does not apply to public records: "This section shall not be construed to limit the public's right of access to public records and meetings as provided by law." There is also no per se federal constitutional right to disclosural privacy, but, rather, a balancing test is used on a case-by-case basis. See Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Shevin v. Byron, Harless.
The legislature has clearly stated that public records shall be open for public inspection. Just as clearly, the instant records are public records. There is no exemption, nor is there a constitutional right of privacy, which prevents their inspection. Any change, exception, or modification must, of necessity, come from the legislature. Wait. We therefore affirm the circuit court's order.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs specially in result with an opinion.
ADKINS, J., concurs in result only.
OVERTON, Justice, specially concurring in result.
I concur in the result. The issues, in my view, need to be addressed more definitively. The majority opinion has failed to properly apply the balancing test dictated by the United States Supreme Court decisions in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). As will be explained, this abdicates our responsibility on this issue to the federal courts and could adversely affect our public records and public meeting law. I am also concerned that we have not applied a balancing test I believe is required by the right of privacy provision contained in article I, section 23, of the Florida Constitution. Finally, I find that we should explain why we cannot address in this case the assertion that this Court should protect the privacy of the poor who must use public facilities such as public housing or hospitals.
This concurring opinion requires a more detailed explanation of the circumstances of this cause. The facts, as alleged in the complaint, reflect that Forsberg and Freeman are indigent tenants in public housing. They, and each member of the class they represent, allegedly submitted
information of a personal and confidential nature concerning their family status and relationship, income, expenses, assets, employment and medical history, as a condition to obtaining decent, safe *375 and sanitary housing at a price that they could afford.
(Emphasis added.) As a result, appellants assert that they
will suffer humiliation and embarrassment, needless invasion of their personal privacy, denial of their right to be let alone, harassment and other adverse consequences, if information concerning their personal lives is subject to public inspection, resulting in public knowledge about files showing their income, assets, bank accounts, medical histories, and other matters of a personal nature.
In Count I of the complaint, appellants claim that the policy of releasing tenant files to the general public pursuant to section 119.01, Florida Statutes (1977), violates the right of privacy implicit in article I, section 2, of the Florida Constitution; Count II claims a violation of the first, fourth, fourteenth amendments of the United States Constitution inasmuch as the information relates to private marital and family matters; Count III claims that allowing public inspection of personal, intimate information absent a showing of need is void as against public policy; and Count IV claims that releasing intimate personal information for general public inspection simply because an individual has made an application for public housing violates due process of law as guaranteed by the fourteenth amendment of the United States Constitution.
The trial judge granted a motion to dismiss and expressly held that
Chapter 119, Florida Statutes, as applied to the subject tenant files is valid and does not violate Article I, Section II of the Florida Constitution . .. [and] does not violate the First, Fourth, Fifth, Ninth or Fourteenth Amendments to the Constitution of the United States... . [P]ublic policy does not mandate that such records be deemed confidential or excepted from Chapter 119, Florida Statutes... .
While this appeal was pending before this Court, the Florida Legislature proposed, and the electorate adopted, a state constitutional right-of-privacy provision contained in article I, section 23, Florida Constitution, effective January 1, 1981. This Court then directed the parties to file supplemental briefs addressing the new provision's effect on the issues presented in this cause.
At the outset it must be recognized that the question presented by the complaint in this case does not concern records in which there is traditionally no expectation of privacy, e.g., court files and public documents such as deeds, judgments, and marriage records. Without question, the records in issue in the instant case are of such a personal, intimate nature that they generally are not considered public. They allegedly include detailed medical information and financial information concerning the tenants.
In summary, I would affirm the trial judge's dismissal of appellants' complaint and find that (1) the housing authority may require an applicant for public housing to submit personal information which is necessary to determine the applicant's qualifications; (2) this information, because it is not exempted from disclosure by statute, must be available for public examination to ensure public accountability of the housing authority and its officers; and (3) Florida's constitutional right of privacy does not prohibit the disclosure of tenant files necessary to promote this state's policy of holding governmental agencies, their officials, and their employees publicly accountable. Because the proper parties and facts are not before this Court, I would not address the issue of whether a civil action for invasion of privacy could be maintained against persons who use personal, intimate information contained in tenant files for strictly private purposes totally unconnected with governmental accountability, but would recognize that this could be a justiciable issue in a future proceeding. I find it is extremely important to explain the appropriateness of the balancing test in this cause. To do so, it is necessary to discuss the various separate aspects of the right of privacy, the public's right to open government *376 and public records, and the applicability of these rights to the instant case.

I. RIGHT OF PRIVACY
The term "right of privacy" applies to various personal rights which are not necessarily interrelated or derived from the same source. The term has three distinct meanings, depending upon the category of privacy law invoked: (1) the basis for an invasion of privacy civil action under tort law; (2) a federal constitutional right against governmental intrusion; and (3) a state constitutional or statutory right against either governmental or private intrusion.[1]

Privacy as a Basis for Tort Action
The first category concerns a wrongful intrusion into the privacy of another, which is remedied through civil tort action. The concept of a privacy tort originated with a phrase coined by Thomas M. Cooley: "The right to one's person may be said to be a right of complete immunity: to be let alone." T. Cooley, supra note 1, at 29 (emphasis added). Samuel Warren and Louis Brandeis later applied this phrase to existing legal principles and developed the concept of "the right of privacy." Warren & Brandeis, supra note 1. Presently, "the [tort] law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'" W. Prosser, supra note 1, at 804. The four interests are: (1) appropriation  the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion  physically or electronically intruding into one's private quarters; (3) public disclosure of private facts  the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye  publication of facts which place a person in a false light even though the facts themselves may not be defamatory. See id. at 802-18; Restatement (Second) of Torts §§ 652B-652E (1976). This Court, following the majority rule, has expressly recognized a right to sue in tort for the civil wrong of "invasion of privacy." Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944).

The Federal Constitutional Right of Privacy
The second category is the federal constitutional right of privacy from unjustified governmental intrusion. The United States Supreme Court has established a fundamental constitutional right of privacy in a number of specific circumstances. In so doing, the Supreme Court separated fourth amendment privacy interests and privacy rights arising under the first, ninth, and fourteenth amendments. Compare Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (warrant required before government could wiretap defendant's telephone booth because "Fourth Amendment protects people, not places"), and Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (principal objective of fourth amendment is protection of privacy rather than property), with Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (zoning ordinance which effectively prohibited woman and her grandson from inhabiting same dwelling violated fourteenth amendment due process), Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (fourteenth amendment right of privacy extended to pregnant woman's decision to abort), and Griswold v. Connecticut, *377 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (state law prohibiting the use of contraceptives invalidated upon finding right of privacy in the "penumbra" of the first, third, fourth, fifth, sixth, and fourteenth amendments).
The United States Supreme Court, in finding that a right of privacy exists under various provisions of the United States Constitution, has, to a limited extent, addressed the right of disclosural privacy. On a case-by-case basis, the Court has balanced the personal right of privacy against the need for governmental intrusion. In applying this balancing test, it recognized a right to disclosural privacy, but found the protested governmental intrusions to be reasonable. See Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (limited and controlled disclosure of former President Nixon's presidential papers and tape recordings not violative of right to privacy); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (upheld a New York statute which compelled disclosure to government of names of persons receiving certain prescription drugs upon finding that statutory safeguards against public disclosure were sufficient to protect individual privacy interests); Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (constitutional right of privacy extended only to matters of intimate or family nature and did not prohibit governmental disclosure of petitioner's arrest record). Accord, Plante v. Gonzalez, 575 F.2d 1119, 1136 (5th Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979) (although public official financial privacy was matter of serious concern and deserving of strong protection, the "public interests supporting public disclosure for these elected officials [were] even stronger").
This Court considered the federal constitutional right of disclosural privacy in Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633 (Fla. 1980), when we were asked to recognize either a federal or state right of privacy prohibiting disclosure of personal information contained in applications for high-level government employment. We determined that no state right of privacy existed and that, although the United States Supreme Court had defined a federal right of privacy protecting an individual from disclosure of certain private information, the right was not violated where the information at issue was contained in an application for an executive position with a governmental agency. We concluded that the public interest in having access to the employment applications for public accountability purposes outweighed any federal constitutionally protected privacy interest that might exist.[2]

State Right of Privacy
The final category concerns a general right of privacy, the right to be free from unjustified governmental and private intrusion, which is guaranteed by state constitutions, legislative acts, and judicial decisions. Although the United States Supreme Court has recognized a fundamental constitutional right of privacy which applies in certain limited circumstances, that Court has refused to establish a general right of privacy under the federal constitution: "But the protection of a person's general right to privacy  his right to be let alone by other people  is, like the protection of his property and of his very life, left largely to the law of the individual States." Katz, 389 U.S. at 350-51, 88 S.Ct. at 510-11 (footnote omitted).
Prior to the enactment of Florida's privacy amendment, this Court expressly refused to find a general right of disclosural privacy emanating from any provision of the Florida Constitution. See Byron, Harless. But cf. Cason v. Baskin (approved civil tort action for invasion of privacy). The new constitutional provision states:
Every natural person has the right to be let alone and free from governmental *378 intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const. Importantly, in recognition of Florida's strong commitment to the public's right to know of governmental operations, the unambiguous language of the new provision makes it clear that courts may not construe the provision in a manner which would impair the public's right of access to public records and meetings to assure governmental accountability.

II. PUBLIC RIGHT TO OPEN GOVERNMENT
Florida has been in the forefront of promoting open government through the broad application of our Sunshine Law, section 286.011, Florida Statutes (1983), and Public Records Act, chapter 119, Florida Statutes (1983). "It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." § 119.01, Fla. Stat. (1983). Section 119.07(1) provides:
(1)(a) Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee. The custodian shall furnish copies or certified copies of the records upon payment of fees as prescribed by law or, if fees are not prescribed by law, upon payment of the actual cost of duplication of the copies. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited, and accounted for in the manner prescribed for other operating funds of the agency.
Exceptions are allowed as set forth in section 119.07(3).[3]
The purpose of the Public Records Act is to promote public awareness and knowledge of governmental actions in order to ensure that governmental officials and agencies remain accountable to the people. The statute authorizes the disclosure for public examination of all governmental records not specifically exempted by statute. This Court, in a series of cases, has recognized that the important public purpose served by our public meeting and open record laws is to ensure governmental accountability. We have specifically upheld the constitutional validity of these acts and have expressly stated that exemptions to the statutory disclosure requirement could be created only by the legislature. Rose v. D'Alessandro, 380 So.2d 419 (Fla. 1980); Shevin v. Byron, Harless; Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979); Florida Commission on Ethics v. Plante, 369 So.2d 332 (Fla. 1979); News-Press Publishing Co. v. Wisher, 345 So.2d 646 (Fla. 1977).
It is important to note that the Fifth Circuit, in discussing Florida's Public *379 Records Act, stated that "it is clear that the legislature cannot authorize by statute an unconstitutional invasion of privacy." Fadjo v. Coon, 633 F.2d 1172, 1176 n. 3 (5th Cir.1981). The Fadjo decision applies a general constitutional right of privacy to investigative criminal testimony taken by a state prosecutor and gives the witness substantial control over the disclosure of his or her testimony. No such general right of privacy has been established as yet by the United States Supreme Court, and I would expressly reject the Fifth Circuit's decision. In my view, the privacy interests of the individual must be weighed against the public interest in open government by using a balancing test similar to that applied by the United States Supreme Court in Whalen v. Roe and Nixon v. Administrator of General Services, by the Fifth Circuit in Plante v. Gonzalez, and by this Court in Byron, Harless. The Fadjo court, in my opinion, did not properly apply the balancing test. The majority's failure to apply a balancing test in the instant case could have a devastating effect on our public meeting and public records law because it opens the door to a more restrictive federal court interpretation of the proper application of the balancing test, and thereby permits those courts to construe our laws contrary to the views of this Court. This Court should at least demonstrate to the federal courts that it has properly applied the United States Supreme Court balancing test. As explained below, I find that all the criteria of the federal balancing test have been met.

III. THE INSTANT CASE
Under the circumstances of this case, I find the requirement that personal family, medical, and financial information be furnished to the housing authority does not violate either federal or state constitutional privacy provisions. Because this is a housing project operated by the government for low income and disabled persons, it is absolutely necessary for the housing authority to receive this information in order to select qualified tenants. Additionally, there is no question that, under chapter 119, these records are public records and open to public examination because the legislature has chosen not to exempt them from disclosure. The issue the court should directly address is whether the public disclosure of public housing tenant files violates appellants' federal and state constitutional right of privacy.
Regarding federal disclosural privacy rights, I conclude that, in balancing the respective interests, the public's right to know about the housing authority's operations, including the selection of tenants, is paramount to the individual tenant's right of nondisclosure of personal information contained in the tenant files. Tenant files must be accessible for public examination so that the public, either individually or through the media, can determine whether the agency is accepting qualified tenants and is properly accountable in the operation of the facility. Financial status and physical condition are two critical elements to be considered in making a determination of whether an applicant is eligible to live in this type of public housing. The intrusion, in my view, is reasonable for the necessary public accountability.
Applying a similar balancing test under Florida's new right of privacy, I reach the same result: The public's right to know in these circumstances outweighs any assertion of a state-created privacy right for these public housing tenants. This result is particularly compelling since the Florida right-of-privacy provision expressly states that the provision shall not be construed to interfere with the policy of public accountability by governmental agencies, as implemented by the Public Records Act. Again, allowing the public examination of these housing authority files is, in my view, a reasonable intrusion necessary to implement the state interest of having the public know how this agency operates. There being no statutory exceptions applicable to tenant records, I conclude that the state constitutional right of privacy does not prohibit the disclosure of this information for public purposes.
*380 I fully recognize that some persons examining these tenant records may utilize the information for strictly private purposes, such as insurance evaluations and credit investigations. Because the proper parties are not before us, I find that we cannot properly address the issue of whether article I, section 23, affects the private use of intimate, personal information that is of public record for strictly private purposes unconnected with governmental accountability. Further, whether a civil tort action for invasion of privacy may be brought against one using his right of access to this type of intimate, personal information for purely private benefit unrelated to governmental accountability is also an issue not properly before this Court in this proceeding.[4] These issues may, however, be proper for another case when the proper parties are before the court.
For these expressed reasons, I concur in the result.
NOTES
[1] For an in-depth study of the right to privacy, see generally T. Cooley, Law of Torts 29 (1880); L. Eldredge, Modern Tort Problems 77 (1941); W. Prosser, Handbook of the Law of Torts § 117 (4th ed. 1971); Restatement (Second) of Torts ch. 652 (1976); Brittan, The Right of Privacy in England and the United States, 37 Tul.L. Rev. 235 (1963); Davis, What Do We Mean by "Right to Privacy"?, 4 S.D.L.Rev. 1 (1959); Moreland, The Right of Privacy Today, 19 Ky.L.J. 101 (1931); Warren & Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890); Note, Toward a Right of Privacy as a Matter of State Constitutional Law, 5 Fla.St.U.L.Rev. 631 (1977). See also [1977] Report of the Privacy Protection Study Commission, Appendix 1: Privacy Law in the States.
[2] Accord, Laird v. State, 342 So.2d 962 (Fla. 1977) (federal right of privacy does not protect smoking marijuana in own home).
[3] Section 119.07(3)(a) provides: "All public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, are exempt from the provisions of subsection (1)." Subsections (b) through (n) of section 119.07(3) provide for specific exemptions from disclosure.

The legislature has enacted many other exceptions now contained in the 1983 Florida statutes. See, e.g. § 63.162 (adoption proceeding records); § 112.533(2) (law enforcement complaint records); § 213.053(2) (tax records); § 229.551(3)(k) (student achievement test records); § 230.2315(3) (educational alternative program records); § 231.262(4) (teacher and administration complaint records); § 382.35 (birth records); § 390.002(3) (abortion records); § 393.13(3)(m) (records of treatment and services provided retarded persons); § 395.0115(3) (licensed facilities disciplinary records); § 396.112 (alcoholic treatment records); § 397.053, .096 (drug abuse treatment records); § 400.321 (records concerning abuse of nursing home residents); § 400.494 (home health agency records); § 402.32(4)(h) (school health agency records); § 413.012 (Blind Services vocational rehabilitation records); § 415.51 (child abuse records); § 415.608 (spouse abuse center records); § 455.241(2) (patient records); § 959.225(3) (HRS youth services records); § 960.28(3) (records of payments to victims of crimes).
[4] In regard to this issue, I am cognizant of the decision of the Third District Court of Appeal in Harms v. Miami Daily News, Inc., 127 So.2d 715 (Fla. 3d DCA 1961). See also Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); Restatement (Second) of Torts, § 652B comment c (1976).