PER CURIAM.
The issue posed by this appeal is whether the tenant records of a public housing authority are exempt (by reason of the Federal Privacy Act) from disclosure otherwise required by the Florida Public Records Law. We agree with the determination of the trial judge that they are not and adopt the pertinent portions of his well-reasoned final judgment as the opinion of this court:
i\t sfc # % ‡
The Housing Authority declined to provide the Tenant Records because it asserted that the requested information was exempt from disclosure pursuant to the provisions of the Federal Privacy Act as set forth in 5 U.S.C. § 552a.
Plaintiff contends that the Tenant Records are public records within the Florida Public Records Law and not confidential under any provision of federal law. The Housing Authority asserts that the Tenant Records are protected from disclosure without the consent of all prospective tenants named in the Tenant Records by the Federal Privacy Act.
The parties agree that the Housing Authority is an agency within the meaning of the Florida Public Records Law and that the Tenant Records would be public records within the meaning of the Florida Public Records Law unless the Federal Privacy Act exempts the Tenant Records from public disclosure.
The evidence shows that the Housing Authority accepts applications from prospective tenants for federally-assisted housing programs funded by the United States Department of Housing and Urban Development (“HUD”). Only tenants eligible for these federally assisted housing programs are accepted by the Housing Authority and substantially all information collected by the Housing Authority from tenant applications is required by HUD to determine eligibility for these federal housing benefits or programs. The information collected included the applicant’s name, current address and telephone number, income, assets, other financial information, the number of dependents (children), age, and other personal information determined relevant by HUD to establish eligibility for these federal benefit programs and any preference of admission. Preferences for admission are awarded under federal law to prospective tenants who pay over fifty (50%) percent of gross income for housing, *119 are living in substandard housing, or have been involuntarily displaced.[1]
Much of the foregoing information is collected by the Housing Authority on forms provided by HUD. At the time of application, HUD requires the Housing Authority to advise the tenant that certain information is protected by the Federal Privacy Act and to have the applicant sign a document to this effect titled “Federal Privacy Act Notice”, which must be maintained in the tenant’s file. This document, a sample of which was admitted into evidence, advises the tenant that “family income and other information” is being collected “by HUD” to determine the applicant’s eligibility for federally assisted housing and that the information will only be released to appropriate federal, state or local agencies “when relevant” and “will not otherwise be disclosed or released outside of HUD” unless permitted by law. The failure of an applicant to provide the required information is stated to be grounds for denial of the application and federally assisted benefits.
In addition, upon application, each prospective tenant is required to sign an Authorization for Release of Information on HUD form 9886, a sample of which was also offered in evidence. This form specifies that it will be used by HUD and the Housing Authority to verify the tenant’s wage and claim information, which information is stated to be protected by the Federal Privacy Act. The tenant, is also advised that the Housing Authority may participate in computer matching programs with other federal, state or local agencies to verify information establishing the tenant’s eligibility for assisted housing.
The testimony before the Court establishes that the Housing Authority collects all of the tenant-applicant information sought by Plaintiff pursuant to the requirements of HUD and participates in computer matching programs to verify tenant information in order to establish eligibility for federally-assisted housing programs. The Housing Authority does not collect tenant information for any purpose other than for administering the federally-assisted housing programs funded by HUD. HUD provides in excess of ninety-five (95%) percent of the Housing Authority’s funding. The Housing Authority’s operations are regulated and audited by HUD in order to assure compliance with federal requirements for assisted housing programs for low income families or individuals.
The Federal Privacy Act, 5 U.S.C. § 552(a) prohibits an affected agency from disclosing any record contained in a system records to any person without the written consent of “the individual to whom the record pertains.” 5 U.S.C. § 552a(b). There is no dispute that HUD is an agency within the meaning of the Act and that the requested information could not be obtained by Plaintiff directly from HUD without the written consent of the affected individuals. Plaintiff does not claim that its request is authorized by any of the provisions of the Federal Privacy Act; rather, Plaintiff contends that the Federal Privacy Act does not apply at all to the Tenant Records because the records of the Housing Authority are not federal “agency records” nor are they maintained by a federal “agency”.
The Housing Authority argues that the records should be deemed to be “agency records” because of the extent of control and regulation by HUD over the Housing Authority in the collection of prospective tenant information and in the administration of its local housing programs, thereby making the Housing Authority function as, or in the nature of, a satellite agency or instrumentality of HUD in these matters. See Forsham v. Harris, 445 U.S. 169, 181, note 11, 63 L.Ed.2d 293, 304, 100 S.Ct. 977 [984, note 11] (1980). In Forsham, the issue before the Court was whether the Freedom of Information Act (“FOIA”), 5 U.S.C. § 552, applied to the records main *120 tained by a non-ageney federal grantee of federal funds. In concluding that the records of the non-agency grantee were not federal or agency records and therefore not subject to disclosure under the Freedom of Information Act, the Court stated that:
Congress did not define “agency record” under the FOIA, but it did define “agency”. The definition of “agency” reveals a great deal about congressional intent as to the availability of records from private grantees under the FOIA, and thus, a great deal about the relevance of federal funding and supervision to the definitional scope of “agency records”. Congress excluded private grantees from FOIA disclosure obligations by excluding them from the definition of “agency”, an action consistent with its prevalent practice of preserving grantee autonomy... The legislative history indicates unequivocally that private organizations receiving federal financial assistance grants are not within the definition of “agency”. In their report, the conferees stated that they did “not intend to include corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it ...” This treatment of federal grantees under the FOIA is consistent with the congressional treatment of them in other areas of federal law ... Grants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day to day supervision ... (emphasis added). The fact that Congress has chosen not to make a federal grantee an “agency” or to vest ownership of the records in the Government does not resolve with mathematical precision the question of whether the granting agency’s funding and supervisory activities nevertheless make the grantee’s records “agency records”. Records of a non-agency certainly could become records of an agency as well. But if Congress found that federal funding and supervision did not justify direct access to the grantee’s records, as it clearly did, we fail to see why we should nevertheless conclude that those identical activities were intended to permit indirect access through an expansive definition of “agency records”. Such a conclusion would not implement the intent of Congress; it would defeat it.
These considerations do not finally conclude the inquiry, for conceivably other facts might indicate that the documents could be “agency records” even though generated by a private grantee. The definition of “agency” and congressional policy towards grantee records indicate, however, that Congress did not intend that grant supervision short of Government control serve as a sufficient basis to make the private records “agency records” under the Act, and reveal a congressional determination to keep federal grantees free from the direct obligations imposed by the FOIA. In ascertaining the intended expanse of the term “agency records” then, we must, of course, construe the Act with regard both for the congressional purpose of increasing public access to governmental records and for this equally explicit purpose of retaining grantee autonomy. Forsham, Id. at 179 through 182 [at 983-84 through 985].
For those reasons, the Forsham court concluded that the records maintained by the non-agency recipient of federal funds were not subject to disclosure under the Freedom of Information Act simply because the. records sought were not “agency records” and therefore not covered within the scope of the FOIA.
In United States vs. Orleans, 425 U.S. 807, 48 L.Ed.2d 390, 96 S.Ct. 1971 (1976) the Court was asked to determine if a local economic opportunity agency, fully funded by the Federal Government was an instrumentality or agency of the Federal Government for the purposes of the Federal Tort Claims Act. The facts of that case reveal that the local economic opportunity agency received all of its funding from the Federal Government and was subject to many federal regulations and close supervision by the Federal Government. In *121 determining whether or not the local agency was an instrumentality or agency of the Federal Government the Court said that:
“the question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government ... By contract, the Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not cover the acts of entrepreneurs—or of state governmental bodies (emphasis added)— into federal governmental acts ... The Federal Government in no sense controls “the detailed physical performance” of all the programs and projects it finances by gifts, grants, contract or loans.
See also EHM v. National Railroad Passenger Corporation, 732 F.2d 1250 (5th Cir.1984).
The Housing Authority has the burden of proving that an exemption applies in this ease. Fla.Stat. § 119.07(2) provides:
A person who has custody of a public record and who asserts that an exemption provided in subsection (3) or in a general or special law applies to a particular public record or part of such record shall delete or excise from the record only that portion of the record with respect to which an exemption has been asserted and validly applies, and such person shall produce the remainder of such record for inspection and examination. If the person who has custody of a public Record contends that the record or any part of it is exempt from inspection and examination, he shall state the basis of the exemption which he contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute, and, if requested by the person seeking the right under this subsection to inspect, examine, or copy the record, he shall state in writing and with particularity the reason for his conclusion that the record is exempt (emphasis added).
It is the policy of both the Florida Public Records Act and the Federal FOIA that the records of public bodies should be accessible to the public absent a clear and specific exemption from disclosure. Courts are not authorized to create exemptions from disclosure or to read into the laws exemptions not clearly created by Congress or the State Legislature.
On the basis of the foregoing authority the Court finds that the Housing Authority is not an agency for purposes of the Federal Privacy Act. The Housing Authority is a public body created by state statute. See § 421.04 Fla.Stat. § 421.21 Fla.Stat. allows housing authorities to apply for and receive funds from the Federal Government. It would be an overly broad reading of the state statute to suggest that the authorization to receive funds from the Federal Government and the requirement to be monitored by the Federal Government thereby renders a public housing authority a federally chartered corporation or federal “agency.” Although the Federal Government funds the Housing Authority and requires compliance with federally mandated standards, it does not provide extensive, detailed or virtually day-to-day supervision over the Housing Authority’s business. Further, in Forsberg v. The Housing Authority of the City of Miami Beach, 455 So.2d 373 (Fla.1984), the Florida Supreme Court held in a similar case that:
While certain records are statutorily exempted from the public’s right to inspect, section 119.07, our examination of the statutes has brought to light no exemption pertaining to the records involved in this appeal. See Rose v. D’Alessandro, 380 So.2d 419 (Fla.1980); Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla.1979). There is, likewise, no state constitutional right of privacy which would shield these records. Prior to the addition of article I, section 23 to the state constitution, this Court had refused to find a general right of disclosure privacy provided for in that document. Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633 (Fla.1990). Moreover, adoption of the privacy amendment offers no relief in this case because section 23 specifically does not apply to public records: “This section shall not be construed to limit the public’s right to access to public records and meetings as provided by law”. *122 There is also no per se federal constitutional right to disclosure privacy, but, rather, a balancing test is used on a case-by-case basis. See Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Shevin v. Byron, Harless.
The legislature has clearly stated that public records shall be open for public inspection. Just as clearly, the instant records are public records. There is no exemption, nor is there a constitutional right of privacy, which prevent their inspection. Any change, exemption, or modification must, of necessity, come from the legislature. Id. at 374.
42 U.S.C. § 1437a(b)(6) defines a public housing authority as “any state, county, municipality or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of low income housing.” This statute does not declare public housing authorities to be federal agencies although Congress could have easily done so in this law, the FOIA, or the Federal Privacy Act had it wished to. This Court finds no federal or state case law finding a public housing authority to be a federal agency or the records of a public housing authority to be agency records.
The control exercised by the federal government over the Housing Authority is not sufficient to render it an agency of the federal government. The federal government is not involved in the day-to-day operations of the Housing Authority. The employees of the Housing Authority are not federal employees. The records that are produced and submitted to the federal government are simply monitoring devices. ****##
AFFIRMED.
COBB, DIAMANTIS and THOMPSON, JJ., concur.

. The Court reviewed in camera one of the waiting lists in question and found that it contains, among other things, the applicant’s full name, telephone number, income, status as elderly or not, and any federal preference. The remaining information sought by Plaintiff can be found from the written applications and records on file with the Housing Authority.