863 So.2d 149 (2003)
STATE of Florida, Petitioner,
v.
CITY OF CLEARWATER, Respondent.
Times Publishing Company, Petitioner,
v.
City of Clearwater, Respondent.
Nos. SC02-1694, SC02-1753.
Supreme Court of Florida.
September 11, 2003.
*150 Christopher M. Kise, Solicitor General, and Louis F. Hubener, Chief Deputy Solicitor General, Tallahassee, Florida; and David F. Chester, Assistant Attorney General, on behalf of Charles J. Crist, Jr., Attorney General, Tallahassee, Florida, for Petitioner, State of Florida.
Pamela K. Akin, City Attorney, and Leslie K. Dougall Sides, Assistant City Attorney, Clearwater, Florida, for Respondent, City of Clearwater.
Carole Sanzeri, Senior Assistant County Attorney, and Michael A. Zas, Senior Assistant County Attorney, Clearwater, Florida, Amicus Curiae, Pinellas County on behalf of Florida Association of County Attorneys.
George K. Rahdert, Alison M. Steele, Penelope T. Bryan, and Thomas E. Reynolds of Rahdert, Steele, Bryan & Bole, P.A., St. Petersburg, Florida, for Petitioners, Times Publishing Company.
PARIENTE, J.
We have for review a decision of the Second District Court of Appeal, which certified the following question of great public importance:
WHETHER ALL E-MAILS TRANSMITTED OR RECEIVED BY PUBLIC EMPLOYEES OF A GOVERNMENT AGENCY ARE PUBLIC RECORDS PURSUANT TO SECTION 119.011(1), FLORIDA STATUTES (2000), AND ARTICLE I, SECTION 24(A), OF THE FLORIDA CONSTITUTION BY VIRTUE OF THEIR PLACEMENT ON A GOVERNMENT-OWNED COMPUTER SYSTEM IF THE AGENCY HAS A WRITTEN POLICY THAT INFORMS THE EMPLOYEES THAT THE AGENCY MAINTAINS A RIGHT TO CUSTODY, CONTROL AND INSPECTION OF E-MAILS?
Times Publishing Co. v. City of Clearwater, 830 So.2d 844, 848-49 (Fla. 2d DCA 2002). We have jurisdiction, see art. V, § 3(b)(4), Fla. Const, and rephrase the certified question as follows:
WHETHER ALL E-MAILS TRANSMITTED OR RECEIVED BY PUBLIC EMPLOYEES OF A GOVERNMENT AGENCY ARE PUBLIC RECORDS PURSUANT TO SECTION 119.011(1), FLORIDA STATUTES (2000), AND ARTICLE I, SECTION 24(A) OF THE FLORIDA CONSTITUTION BY VIRTUE OF THEIR PLACEMENT ON A GOVERNMENT-OWNED COMPUTER SYSTEM.
For the reasons stated below, we answer the rephrased question in the negative and approve the Second District's decision.

FACTS
The facts of this case are straightforward. In October 2000, a Times Publishing Company reporter requested that the City of Clearwater provide copies of all e-mails either sent from or received by two city employees over the City's computer network between October 1, 1999, and October 6, 2000. Pursuant to the City's procedures, the employees reviewed their e-mails and sorted them into two categories, personal and public. No one else reviewed *151 the e-mails deemed by the employees to be personal. The City copied the public e-mails and provided them to Times Publishing.
Times Publishing filed an action in the circuit court to obtain the e-mails the employees had designated as private. Times Publishing asserted that it was entitled to all the e-mails generated by and stored on the City's computers. The circuit court granted Times Publishing's request for a temporary injunction and ordered the City to "make every reasonable effort to retrieve, preserve and secure from destruction" all e-mails sent or received by the employees in question between October 1, 1999, and October 6, 2000.
After a final hearing at which three of the City's employees testified, the trial court issued a detailed and thorough order denying Times Publishing's request for a writ of mandamus and permanent injunctive relief. The Second District affirmed the trial court's order without prejudice to Times Publishing seeking an in camera review of the disputed e-mails. See Times Publishing, 830 So.2d at 848. The Second District concluded that "private" or "personal" e-mails fall outside the current definition of public records because they are neither "made or received pursuant to law or ordinance" nor "created or received `in connection with official business' of the City or `in connection with the transaction of official business' by the City." Id. at 847. Because its decision affects how every state agency and municipality maintains its electronic records and the public's access to those records, the Second District certified the question of great public importance to this Court. See id. at 848-49.[1]

ANALYSIS
This case involves the narrow legal issue of whether personal e-mails are considered public records by virtue of their placement on a government-owned computer system.[2] "The determination of what constitutes a public record is a question of law entitled to de novo review." Media Gen. Convergence, Inc. v. Chief Judge of the Thirteenth Judicial Circuit, 840 So.2d 1008, 1013 (Fla.2003).
Times Publishing argues that the placement of e-mails on the City's computer system makes the e-mails public records, regardless of their content or intended purpose. The State contends that the headers created by e-mails when they are sent are akin to phone records or mail logs, which the State asserts are clearly public records. We conclude that both of these arguments are without merit.
Access to public records is currently guaranteed by article I, section 24 of the Florida Constitution, and chapter 119 Florida Statutes (2002). Article I, section 24 provides in pertinent part:
(a) Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting *152 on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive and judicial branches of government....
(Emphasis supplied.) Chapter 119 defines public records as
all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.

§ 119.011(1), Fla. Stat. (2002) (emphasis supplied). Thus, both article I, section 24 and chapter 119 specify that public records are those records that are in some way connected to "official business."
A review of the history of Florida's public records law indicates that the connection between public records and official business was established well before the Legislature enacted the first public records statute. In Bell v. Kendrick, 25 Fla. 778, 6 So. 868 (1889), this Court considered whether evidence of a certificate of a deed was admissible in an action for ejectment when the deed was lost and had never been recorded. The Court noted that records kept by persons in public office are generally admissible, and explained:
[W]henever a written record of the transactions of a public officer is a convenient and appropriate mode of discharging the duties of his office, it is not only his right, but his duty, to keep that written memorial, ... and, when kept, it becomes a public documenta public recordbelonging to the office, and not to the officer.
Id. at 869 (emphasis supplied). The Court concluded that because "[i]t was clearly the duty of the register of state lands to keep in his office a register of sales and conveyances of land," a certified transcript of these entries was admissible as evidence of the execution of the conveyance. Id. at 870.
Twenty years after Bell, the Legislature enacted Florida's first public records statute, which mandated that "all State, county and municipal records" be open "for a personal inspection of any citizen of Florida, and those in charge of such records shall not refuse this privilege to any citizen." Ch. 5942, Laws of Fla. (1909). The statute did not provide a definition of public records and this Court continued to apply the "discharge of duty" analysis established in Bell. See Amos v. Gunn, 84 Fla. 285, 94 So. 615, 634 (1922) ("A public record is one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done.").
In 1967 the Legislature first defined the term "public records":
"Public Records" shall mean all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.

Ch. 67-125, § 1(a) at 254, Laws of Fla. (emphasis supplied). This definition, codified in section 119.011(1), has remained essentially unchanged. The most significant change to section 119.011(1) occurred in 1995 when the Legislature amended the definition of "public records" to include "data processing software" and information regardless of "means of transmission." See ch. 95-296, § 6 at 2727, Laws of Fla. Thus, electronic documents stored in a *153 computer can be public records provided they are "made or received pursuant to law or ordinance or in connection with the transaction of official business." § 119.011(1), Fla. Stat. (2002).
"In construing a statute, we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996). Based on the plain language of section 119.011(1), we agree with the Second District's conclusion that "private" or "personal" e-mails "simply fall[] outside the current definition of public records." Times Publishing, 830 So.2d at 847. As the Second District explained:
Such e-mail is not "made or received pursuant to law or ordinance." Likewise, such e-mail by definition is not created or received "in connection with the official business" of the City or "in connection with the transaction of official business" by the City. Although digital in nature, there is little to distinguish such e-mail from personal letters delivered to government workers via a government post office box and stored in a government-owned desk.
Id. This conclusion is supported by this Court's decision in In re Amendments to Rule of Judicial Administration 2.051 Public Access to Judicial Records, 651 So.2d 1185 (Fla.1995), in which we discussed the public's right of access to the judicial branch's official business e-mail:
Official business e-mail transmissions must be treated just like any other type of official communication received and filed by the judicial branch.... E-mail may include transmissions that are clearly not official business and are, consequently, not required to be recorded as a public record.

Id. at 1187 (emphasis supplied).
Although public access to records of the judicial branch is governed by court rule rather than by chapter 119,[3] we recently acknowledged that the definition of "judicial records" contained in Florida Rule of Judicial Administration 2.051 "is virtually identical to the legislative definition of `public records' contained in section 119.011(1) ... insofar as section 119.011(1) defines `public records' as `all documents... made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.'" Media Gen. Convergence, 840 So.2d at 1014. Thus, this Court's determination that judicial e-mails that are not made or received in connection with official business are not required to be recorded as public records also applies to agency e-mails governed by chapter 119.[4]
*154 Further, Times Publishing's argument that the placement of e-mails on the City's computer network automatically makes them public records is contrary to this Court's decision in Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc., 379 So.2d 633 (Fla.1980). In Shevin, this Court rejected the First District's conclusion that "section 119.011(1) applies to almost everything generated or received by a public agency." Id. at 640. Although this Court acknowledged that the Legislature broadened the class of public records in enacting section 119.011(1), this Court concluded that the definition of the term "public records" limited "public information to those materials which constitute recordsthat is, materials that have been prepared with the intent of perpetuating or formalizing knowledge." Id. (second emphasis supplied). Thus, it cannot merely be the placement of the e-mails on the City's computer system that makes the e-mails public records. Rather, the e-mails must have been prepared "in connection with official agency business" and be "intended to perpetuate, communicate, or formalize knowledge of some type." Id.
We agree with the trial court's observation that "[c]ommon sense ... opposes a mere possession rule." The trial court explained:
This court noted several times during hearings on this case the absurd consequences of such an application of the law. If the Attorney General brings his household bills to the office to work on during lunch, do they become public record if he temporarily puts them in his desk drawer? If a Senator writes a note to herself while speaking with her husband on the phone does it become public record because she used a state note pad and pen? The Sheriff's secretary, proud of her children, brings her Mother's Day cards to the office to show her friends. Do they become public records if she keeps them in the filing cabinet?
Times Publishing Co. v. City of Clearwater, No. 00-8232-CI-13 at 10 (6th Cir Ct. order filed May 21, 2001). Just as an agency cannot circumvent the Public Records Act by allowing a private entity to maintain physical custody of documents that fall within the definition of "public records," see Wisner v. City of Tampa Police Dep't, 601 So.2d 296, 298 (Fla. 2d DCA 1992), private documents cannot be deemed public records solely by virtue of their placement on an agency-owned computer. The determining factor is the nature of the record, not its physical location.
Moreover, we agree with the City that its "Computer Resources Use Policy," which states that the City's computer resources are the property of the City and that users have no expectation of privacy, cannot be construed as expanding the constitutional or statutory definition of public records to include "personal" documents. Times Publishing conceded at oral argument that its positionthat all e-mails on the City's computer should be considered public recorddoes not hinge on the City's Computer Resources Use Policy. Further, as noted by the Second District, "[a]lthough the City's policy may prevent the employees from asserting a privacy right to contest disclosure, the policy did not and could not alter the statutory definition of public records for purposes of chapter 119." Times Publishing, 830 So.2d at 846. Cf. Tribune Co. v. Cannella, 458 So.2d 1075, 1077 (Fla.1984) (stating *155 that it is a "fundamental principle that a municipality may not act in an area preempted by the legislature" and holding that the Public Records Act preempted the City of Tampa's regulation that delayed the production of requested personnel records).
Finally, we disagree with the narrower view asserted by the Attorney General that the creation of an e-mail "header" makes all e-mails, regardless of their content or intended purpose, public records. Relying on the Department of State's public records retention schedule, the Attorney General describes the header information of an e-mail as "including all date/time stamps, routing information, etc."[5] The Attorney General asserts that the e-mail system's creation of this header information distinguishes e-mails from paper documents and makes all e-mails generated on or received by a City computer subject to disclosure under chapter 119. The Attorney General supports this assertion by comparing the creation of e-mail headers to the creation of mail logs or phone records, which the Attorney General maintains are clearly public records even if they contain information that is personal.
Assuming arguendo that an agency's mail logs or phone records are public records,[6] we cannot equate the automatic creation of a header for each article of correspondence by an e-mail program with a log. The Attorney General contends that the only difference between phone records or traditional mail logs and the e-mail header information is that traditional logs are contained as one single document, not as multiple, independent entries. We conclude that this is an essential difference.
In this case, there is no evidence in the record that the City maintains or generates, in its normal course of operations, a list of e-mail headers created by its employees' use of the computer network. The fact that mail logs and phone records are purposely compiled and maintained by an agency distinguishes them from e-mail headers, which are by-products of the employee's use of the agency's e-mail system, and are neither purposely compiled nor maintained in the course of an agency's operations. Simply stated, e-mail headers are not "prepared" with the intent to "perpetuate, communicate, or formalize knowledge of some type." Shevin, 379 So.2d at 640. Therefore, neither the individual header nor the attached e-mail is a "public record" subject to disclosure under chapter 119.
Based on the foregoing, we conclude that "personal" e-mails are not "made or received pursuant to law or ordinance or in connection with the transaction of official business" and, therefore, do not fall within the definition of public records in section 119.011(1) by virtue of their placement on a government-owned computer system. Accordingly, we answer the rephrased question in the negative and approve the Second District's decision.[7]
It is so ordered.
*156 ANSTEAD, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] After the Second District released its initial decision in this case, the State, through the Attorney General, filed a motion to intervene in support of Times Publishing's motion for certification of a question of great public importance. The Second District withdrew its initial decision and reissued its opinion, granting the Attorney General's motion and certifying the question of great public importance to this Court.
[2] As noted by the Second District, this case does not involve: (1) "e-mail[s] that may have been isolated by a government employee whose job required him or her to locate employee misuse of government computers"; (2) "a balancing of the public's interest in open public records and an individual's right to privacy"; or (3) "an in camera inspection of records." Times Publishing, 830 So.2d at 845-46.
[3] Chapter 119 applies only to "agency" records. "Agency" is defined as:

[A]ny state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law including, for the purposes of this chapter, the Commission on Ethics, the Public Service Commission, and the Office of Public Counsel, and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
§ 119.011(2), Fla. Stat. (2002).
[4] In Report of the Supreme Court Workgroup on Public Records, 825 So.2d 889, 896 (Fla. 2002), the Court amended rule 2.051, replacing the term "judicial records" with the term "records of the judicial branch," which includes both "court records" and "administrative records." "Records of the judicial branch" are defined as "all records, regardless of physical form, characteristics, or means of transmission, made or received in connection with the transaction of official business by any judicial branch entity." Fla. R. Jud. Admin. 2.051(b)(1) (emphasis supplied). "Court records" are the contents of the court file and "administrative records" are "all other records made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business by any judicial entity." Fla. R. Jud. Admin 2.051(b)(1)(A)-(B) (emphasis supplied). Thus, judicial records subject to public disclosure are still limited to those "made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business."
[5] See Division of Library and Information Services, Department of State, General Records Schedule GS1-L for Local Government Agencies ii (2001) available at http://dlis.dos.state.fl.us/barm/genschedules/gensched.htm.
[6] Compare Op. Att'y Gen. Fla. 99-74 (1999) (advising a school board that its phone records were public records even if the calls indicated were personal and paid for by the employee) with Media Gen. Operation, Inc. v. Feeney, 849 So.2d 3, 6 (Fla. 1st DCA 2003) (holding that records of personal phone calls made by staff employees of the House of Representatives "fall outside the current definition of public records and were properly redacted").
[7] We decline to address the remaining issue raised by the parties because it is beyond the scope of the certified question. See Crocker v. Pleasant, 778 So.2d 978, 990-91 (Fla.2001).