Dear Mr. Goren:
On behalf of the Coral Springs City Commission, you ask the following questions:
1. If the city chooses to maintain a Facebook page, would all contents of the city's page, including information about the city's "friends" and their pictures, and the friend's respective Facebook pages, be subject to the Public Records Law, Chapter 119, Florida Statutes?
2. If Question One is answered in the affirmative, is the city obligated to follow a public records retention schedule as set forth in the State of Florida General Records Schedule GSI for State and Local Government Agencies?
3. If Question One is answered in the affirmative, is Florida's Right of Privacy, as guaranteed in Article I, section 23, Florida Constitution implicated by the inclusion of information about the city's "friends" and the respective link to the friends' Facebook pages linked to the city's page?
4. Would communications on the city's Facebook page regarding city business be subject to Florida's Government in the Sunshine Law, section 286.011, Florida Statutes?
In sum:
1. Since the city is authorized to exercise powers for a municipal purpose, the creation of a Facebook page must be for a municipal, not private purpose. The placement of material on the city's page would presumably be in furtherance of such purpose and in connection with the transaction of official business and thus subject to the provisions of Chapter 119, Florida Statutes. In any given instance, however, the determination would have to be made based upon the definition of "public record" contained in section 119.11, Florida Statutes. Similarly, whether the Facebook page of the friends would also be subject to the Public Records Law, Chapter 119, Florida Statutes, would depend on whether the page and information contained therein was made or received in connection of the transaction of official business by or on behalf of a public agency.
2. The city is under an obligation to follow the public records retention schedules established by law.
3. While Article I, section 23, Florida Constitution, may be implicated in determining what information may be collected by the city, the constitutional provision expressly states that "[t]his section shall not be construed to limit the public's right of access to public records and meetings as provided by law." Thus, to the extent that information on the city's Facebook page constitutes a public record within the meaning of Chapter 119, Florida Statutes, Article I, section 23, Florida Constitution, is not implicated.
4. Communications on the city's Facebook page regarding city business by city commissioners may be subject to Florida's Government in the Sunshine Law, section 286.011, Florida Statutes. Thus, members of a city board or commission must not engage on the city's Facebook page in an exchange or discussion of matters that foreseeably will come before the board or commission for official action.
You state that Facebook is a social networking website maintained by privately-owned Facebook, Inc., which allows users to create profiles that include personal interests and pictures. According to your letter, Facebook allows users to build networks of "friends" which allows such friends, once they have been added to the user's profile, to appear on the user's profile. Facebook also contains interactive features, including instant messaging and a "Wall" which allows friends to post messages and attachments which may be viewed by anyone who may view the user's profile.
As you have not provided this office with a specific fact situation, my comments must be general in nature.
Question One
Section 166.021(1), Florida Statutes, sets forth the authority of municipalities, stating:
"As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power formunicipal purposes, except when expressly prohibited by law." (e.s.)
The Florida Supreme Court has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services."[1] The only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose.[2] The determination of what constitutes a valid municipal purpose for the expenditure of public funds is one that must be made by the city commission and cannot be delegated to this office.[3] In making this determination, the commission must make appropriate legislative findings.
Accordingly, the city would appear to have the authority to establish a Facebook page under its home rule powers provided the establishment of such a page is for a valid municipal purpose and the city commission has made the appropriate legislative findings. You have not advised this office as to the nature of the information that will be contained on the city's page. Section 119.011(12), Florida Statutes, however, defines "Public records" for purposes of Chapter 119, Florida Statutes, to include
"all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."
The Florida Supreme Court has interpreted this definition to encompass all materials made or received by an agency in connection with official business which are used to perpetuate, communicate, or formalize knowledge.[4] It is the nature of the record created rather than the means by which it is created which determines whether it is a public record.[5] The placement of information on the city's Facebook page would appear to communicate knowledge. Thus, the determination in any given instance as to whether information constitutes a public record will depend on whether such information was made or received in connection with the transaction of official business by the city.
As noted above, you have not advised this office as to what will be placed on the Facebook page. Inasmuch as the page must be established for a municipal purpose and in the absence of specific information as to the material placed on the city's Facebook page, this office presumes that the information contained on the page would be made or received in connection with the official business of the city. I recognize that the Florida Supreme Court ruled that private e-mail stored in government computers does not automatically become a public record by virtue of that storage:
"Just as an agency cannot circumvent the Public Records Act by allowing a private entity to maintain physical custody of documents that fall within the definition of "public records," . . . private documents cannot be deemed public records solely by virtue of their placement on an agency-owned computer."[6]
Therefore, there may be material placed on the city's Facebook page that is personal and does not relate to the transaction of official business. However, as noted above, the creation of a Facebook page must be for a municipal, not private, purpose. Accordingly, the placement of material on the city's page would presumably be in furtherance of such purpose and in connection with the transaction of official business and thus subject to the provisions of Chapter 119, Florida Statutes. In any given instance, however, the determination would have to be made based upon the definition of "public record" contained in section 119.11, Florida Statutes, as defined by the courts.
You also inquire whether the Facebook page of the friends would also be subject to the Public Records Law, Chapter 119, Florida Statutes. You do not indicate who these "friends" of the city may be. In the absence of more information, this office cannot categorically conclude that the Facebook pages of such "friends" would be subject to Chapter 119; rather such a determination would depend on whether the information contained on such pages was made or received in connection of the transaction of official business by or on behalf of a public agency such as the city. In light of the above, the city, should it establish a Facebook page, may wish to post a warning regarding the application and implications of the Public Records Law.[7]
Question Two
Section 119.021(2)(a), Florida Statutes, requires the Division of Library and Information Services (division) of the Department of State to adopt rules establishing retention schedules and a disposal process for public records. Each agency must comply with these rules.[8] The division shall establish a time period for the retention or disposal of each series of records.[9]
Section 257.36(6), Florida Statutes, provides that a "public record may be destroyed or otherwise disposed of only in accordance with retention schedules established by the division." This office in Attorney General Opinion 96-34, recognizing that the definition of "public records" is comprehensive and encompasses all such material regardless of its physical form or characteristics, stated that electronic public records such as e-mail messages are subject to the statutory limitations on destruction of public records. More recently, this office stated in Attorney General 08-07 that the public records on a website maintained by a city council member that related to the transaction of city business would appear to be subject to the city's policies and retention schedule regarding city records.
The General Records Schedule GS1-SL for State and Local Government Agencies states that "[a]ll Florida public agencies are eligible to use the GS1-SL, which provides retention periods for the most common administrative records such as routine correspondence and personnel, payroll, financial, and legal records."[10] Thus, to the extent that the information on the city's Facebook page constitutes a public record, the city is under an obligation to follow the public records retention schedules established by law.
Questions relating to the applicability of a retention schedule or retention of a specific record, however, should be referred to the Division of Library and Information Services in the Department of State.
Question Three
Article I, section 23, Florida Constitution, provides:
"Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law."
Therefore, while the Florida Constitution recognizes a right of privacy for Florida citizens in Article I, section 23, Florida Constitution, it also states that "[t]his section shall not be construed to limit the public's right of access to public records and meetings as provided by law." The Florida courts have determined that no federal or state right of privacy prevents access to public records.[11] It is the Legislature that has balanced the private versus public rights by creating the various exemptions from public disclosure.[12] Thus, in Florida, "neither a custodian of records nor a person who is the subject of a record can claim a constitutional right of privacy as a bar to requested inspection of a public record which is in the hands of a government agency."[13]
While Article I, section 23, Florida Constitution, may be implicated in determining what information may be collected by the city, [14] to the extent that information on the city's Facebook page constitutes a public record within the meaning of Chapter 119, Florida Statutes, Article I, section 23, Florida Constitution, is not implicated. As notedsupra, the city may wish to post a notice on its Facebook page regarding the Public Records Law.
Question Four
Section 286.011, Florida Statutes, the Government in the Sunshine Law, has three basic requirements:
"(1) meetings of public boards or commissions must be open to the public;
(2) reasonable notice of such meetings must be given; and
(3) minutes of the meetings must be taken and promptly recorded."
The law applies to any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter on which foreseeable action will be taken by the public board or commission.[15] The law extends to the discussions and deliberations as well as the formal action taken by a public board or commission, with no requirement that a quorum be present for a meeting of members of a public board or commission to be subject to section 286.011, Florida Statutes.
While the Sunshine Law generally applies to meetings of "two or more" members of the same board or commission, [16] the Florida Supreme Court has stated that the Sunshine Law is to be construed "so as to frustrate all evasive devices."[17] Thus, the courts and this office have found that there are instances where the physical presence of two or more members is not necessary in order to find the Sunshine Law applicable. Thus, this office has stated that members of a public board may not use computers to conduct a private discussion among themselves about board business.[18]
In Attorney General Opinion 08-07, this office concluded that the use of a website blog or message board to solicit comment from other members of the board or commission by their response on matters that would come before the board would trigger the requirements of the Sunshine Law. As stated therein:
"While there is no statutory prohibition against a city council member posting comments on a privately maintained electronic bulletin board or blog, . . . members of the board or commission must not engage in an exchange or discussion of matters that foreseeably will come before the board or commission for official action. The use of such an electronic means of posting one's comments and the inherent availability of other participants or contributors to act as liaisons would create an environment that could easily become a forum for members of a board or commission to discuss official issues which should most appropriately be conducted at a public meeting in compliance with the Government in the Sunshine Law. It would be incumbent upon the commission members to avoid any action that could be construed as an attempt to evade the requirements of the law."
Such concerns would appear to be equally applicable to the issue at hand. While there would not appear to be a prohibition against a board or commission member posting comments on the city's Facebook page, [19]
members of the board or commission must not engage in an exchange or discussion of matters that foreseeably will come before the board or commission for official action.
Accordingly, communications on the city's Facebook page regarding city business may be subject to Florida's Government in the Sunshine Law, section 286.011, Florida Statutes.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] State v. City of Sunrise, 354 So. 2d 1206, 1209 (Fla. 1978).
[2] Id. And see Ops. Att'y Gen. Fla. 83-06 (1983) and 72-198(1972) for the proposition that a municipality's home rule power is tempered by the basic proposition that municipal funds may be used only for a municipal purpose. See also Art. VII, s. 10, Fla. Const. (municipality prohibited from lending or using its taxing power or credit to aid private parties).
[3] See, e.g., Ops. Att'y Gen. Fla. 88-52 (1988), 86-87 (1986), 84-76 (1984), and 83-05 (1983) (legislative determination and findings as to the purpose and the benefits accruing to the county from the program could not be delegated to the Attorney General, nor could the Attorney General undertake to make such legislative findings on behalf of the county).
[4] Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So. 2d 633, 640 (Fla. 1980).
[5] See Op. Att'y Gen. Fla. 08-07 stating that an email created by a public official in connection with the transaction of official business is a public record whether it is created on a publicly or privately owned computer and concluding that the posting of comments relating to city business by a city commissioner on a web page which he maintains would be subject to the Public Records Law.
[6] State v. City of Clearwater, 863 So. 2d 149, 154 (Fla. 2003).
[7] Cf. s. 668.6076, Fla. Stat., requiring any agency as defined in s.119.011, Fla. Stat., or legislative entity that operates a website and uses electronic mail to post the following statement in a conspicuous location on its website:
"Under Florida law, e-mail addresses are public records. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in writing."
[8] Section 119.021(2)(b), Fla. Stat. And see s. 119.021(2)(c), Fla. Stat., providing that public officials must "systematically dispose" of records no longer needed, subject to the consent of the division in accordance with s. 257.36, Fla. Stat.
[9] Id.
[10] The general retention schedules, including GS1-SL, are available at: http://dlis.dos.state.fl.us/recordsmgmt/gen_records_schedules.cfm.
[11] See, e.g., Michel v. Douglas, 464 So. 2d 545 (Fla. 1985) (no federal or state right of privacy prevents access to public records);Forsberg v. Housing Authority of Miami Beach, 455 So. 2d 373 (Fla. 1984); Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So. 2d 633 (Fla. 1980) (no federal or state disclosural right of privacy prevents a member of the public from seeing public records); Millsv. Doyle, 407 So. 2d 348 (Fla. 4th DCA 1981).
[12] Wallace v. Guzman, 687 So. 2d 1351 (Fla. 3d DCA 1997). Cf.Berkeley v. Eisen, 699 So. 2d 789 (Fla. 4th DCA 1997) (although Art. I, s. 23, Fla. Const., recognizes that the right of privacy shall not be construed to limit the public's right of access to public records, there is a statutory exemption from Florida's public records disclosure where the Department of Banking and Financing is investigating or has concluded its investigation of a securities customer's complaint).
[13] Williams v. City of Minneola, 575 So. 2d 683, 687 (Fla. 5th DCA 1991), review denied, 589 So. 2d 289 (Fla. 1991), appeal after remand,619 So. 2d 983 (Fla. 5th DCA 1993).
[14] Cf. Thomas v. Smith, 882 So. 2d 1037 (Fla. 2d DCA 2004), in which the appellant taxpayers had filed a timely application for ad valorem tax exemption, but refused to make the required disclosure of their social security numbers. Their application was denied based on their refusal to make the required disclosure. Appellants argued that the required disclosure of their social security number in order to claim the exemption violated, among others, Art. I, s. 23, Fla. Const. The district court concluded that the lower court erred in concluding that the taxpayers had no legitimate expectation of privacy in their social security numbers; rather the court should first have determined whether the taxpayers had a legitimate expectation of privacy in their social security numbers without regard to other considerations such as the necessity to submit an application in order to obtain the benefit of the homestead tax exemption. The district court therefore remanded the case for further proceedings on this claim.
[15] See, e.g., Hough v. Stembridge, 278 So. 2d 288 (Fla. 3d DCA 1973). And see City of Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971);Board of Public Instruction of Broward County v. Doran, 224 So. 2d 693
(Fla. 1969); and Wolfson v. State, 344 So. 2d 611 (Fla. 2d DCA 1977).
[16] Hough v. Stembridge, supra. And see City of Sunrise v. News andSun-Sentinel Company, 542 So. 2d 1354 (Fla. 4th DCA 1989); DeerfieldBeach Publishing, Inc. v. Robb, 530 So. 2d 510 (Fla. 4th DCA 1988) (requisite to application of the Sunshine Law is a meeting between two or more public officials); and Mitchell v. School Board of Leon County,335 So. 2d 354 (Fla. 1st DCA 1976).
[17] See, e.g., Town of Palm Beach v. Gradison, 296 So. 2d 473, 477
(Fla. 1974); Blackford v. School Board of Orange County, 375 So. 2d 578
(Fla. 5th DCA 1979).
[18] Op. Att'y Gen. Fla. 89-39 (1989). Compare 01-20 (2001) (a one-way e-mail communication from one city council member to another, when it does not result in the exchange of council members' comments or responses on subjects requiring council action, does not constitute a meeting subject to the Sunshine Law; however, such e-mail communications are public records and must be maintained by the records custodian for public inspection and copying).
[19] Cf. Op. Att'y Gen. Fla. 07-35 (2007), concluding that members of a commission may exchange documents that they wish other members of the commission to consider on matters coming before the commission for official action, provided there is no response from, or interaction related to such documents among, the commissioners prior to the public meeting. It was noted, however, that if the commissioners intended to exchange individual position papers on the same subject, this office would express the same concerns as discussed in Attorney General Opinion 01-21. In that opinion, this office was asked whether the preparation and distribution of individual position statements on the same subject by several city council members to all other council members would constitute an interaction or exchange by the council that would be subject to the requirements of the Government in the Sunshine Law. This office determined that such a practice would violate the Sunshine Law to the extent that any such communication is a response to another council member's statement.