# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-3507
_____

EXECUTIVE OFFICE OF THE
GOVERNOR, and GOVERNOR RON
DESANTIS

    Appellants,

    v.

FLORIDA CENTER FOR
GOVERNMENT ACCOUNTABILITY,
INC.,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
James Lee Marsh, Judge.


February 19, 2025

NORDBY, J.

Governor Ron DeSantis challenges the circuit court's determination that he, along with the Executive Office of the Governor, violated Florida's public records laws. Specifically, the circuit court found that the Governor's Executive Office failed to

timely respond to a public records request from the Florida Center for Government Accountability. We reverse.[1]

## I.

In September 2022, the Center submitted two[2] records requests to the Executive Office relating to Florida's involvement in transporting unauthorized aliens from Texas to Martha's Vineyard, Massachusetts. Both requests sought multiple categories of records. The first request, on September 20th, sought:

1. Any record sent or received by James Uthmeier regarding the migrant relocation program during the period between September 1, 2022, and 6:00 a.m. on September 15, 2022.

2. The phone log for any telecommunications device used by James Uthmeier to send or receive calls during the period between September 1, 2022, through 6:00 a.m. on September 15, 2022. "Phone log" means the record of calls made or received via any cellular device, landline or desk phone.

3. The text log of any cellular device used by James Uthmeier to send or receive texts during the period between September 1, 2022, through 6:00 a.m. on September 15, 2022. "Text log" means the record of any texts sent or received via any cellular or electronic device or messaging app.

4. All records sent to or received from Vertol Systems Company, including any agency, agent, representative, employee, attorney or other individual or entity acting on behalf of Vertol Systems Company, during the period

---

[1] Judge Nordby was substituted for an original panel member in this proceeding after oral argument. She has reviewed the parties' briefs, the record, and the recording of the oral argument.

[2] The Center also made a third public records request, which is not at issue in this appeal.

between August 15, 2022, and 6:00 a.m. on September 15, 2022.

5. All records sent to or received from Greg Abbott, or any agent, representative, employee, attorney or other individual or entity acting on behalf of Greg Abbott, or the State of Texas, during the period between September 1, 2022, and 6:00 am. on September 15, 2022, relating to any of the following subject matters:

> a. the migrant relocation program;
>
> b. the transport of individuals from Texas to Florida;
>
> c. the transport of individuals from Texas to Massachusetts;
>
> d. printing written materials about the availability of services in Massachusetts;
>
> e. delivering written materials about the availability of services in Massachusetts.

A day later, the Center made a second request for:

1. Any record purporting to be a waiver signed by immigrants in San Antonio, Texas as part of any immigrant relocation program and flights to Martha's Vineyard, Massachusetts on September 14, 2022.

2. Any record purporting to be a waiver signed by immigrants aboard a flight from San Antonio, Texas to Crestview, Florida on September 14, 2022.

3. Any record purporting to be a waiver signed by immigrants aboard a flight from Crestview, Florida to Charlotte, NC on September 14, 2022.

4. Any record purporting to be a waiver signed by immigrants aboard a flight from Charlotte, NC, to Martha's Vineyard, Massachusetts on September 14, 2022.

3

At the time of these requests, the Office had about 150 open public records requests. On September 23rd, Governor DeSantis declared a state of emergency in preparation for Tropical Storm Ian, which was predicted to impact Florida as a major hurricane. Fla. Exec. Order No. 22-218 (Sept. 23, 2022); Fla. Exec. Order No. 22-219 (Sept. 24, 2022). Less than forty-eight hours later, on the 25th, the Center sent notice to the Office that if the requests were not fulfilled by September 30th, it would seek judicial enforcement. Hurricane Ian made landfall near Fort Myers as a Category 4 storm on September 28th. It traveled across the state peninsula, exiting Florida near Cape Canaveral the next day. Nat'l Oceanic and Atmospheric Admin., *Hurricane Ian* 1, 4 (2023), https://www.nhc.noaa.gov/data/tcr/AL092022_Ian.pdf.

Just over two weeks after receiving the requests, on October 7th, the Office provided the Center with a partial production and conveyed that a rolling production of responsive documents would be produced as the documents were reviewed and redacted as needed. The Center responded that "[t]his [was] not a good faith response and the Agency has been given more than adequate time to produce all responsive records." On October 10th, the Center filed the underlying complaint to enforce its requests.

The circuit court handled the case in an expedited fashion and held a final hearing. After receiving argument and evidence from both sides, the circuit court announced its ruling from the bench on October 25th:

> The Court finds that the Executive Office of the Governor is not in compliance with Florida Statute 119. In this case the Court will note among other things there are the Governor's office has not proven any steps, direct steps taken to gather what this Court finds are public records regarding state business transacted on personal devices. Actions may have been taken, but that's why we're here and the state has not shown what those actual actions were. Similarly, I understand the state maybe in a challenging position, but the state has not shown any statutory basis for redacting records provided to the Plaintiffs in this case.
>
> [. . .]

4

The Court cannot find any provision that the Governor's office has provided under the law that justifies the redaction of documents in this case.

The circuit court ordered the Office to produce the remaining documents in twenty days. The court also granted the Center's request for attorney's fees and costs, reserving jurisdiction to determine the amount. Soon after, the court rendered a written final order consistent with its earlier ruling. This timely appeal follows.

II.

To begin, the Center has twice moved to dismiss this appeal for lack of jurisdiction. We denied the first motion to dismiss without explanation. Given the Center's renewed attempt to dismiss, we deny the request and explain why.

The thrust of the Center's jurisdictional argument is that this appeal is premature as the order on appeal determines entitlement to attorney's fees but fails to set the award amount. Until the circuit court sets the amount, the Center maintains we have no jurisdiction to review the court's ruling that the Governor and his Executive Office violated Florida's public records laws.

The Center, however, relies on a collection of cases that turned upon a well-settled principle not applicable here: Trial court orders that make collateral determinations of entitlement to attorney's fees are ordinarily not appealable until the amount of the award has been determined. *See, e.g., Gilligan, Gooding, Batsel & Anderson, P.A. v. Condor Aerial, LLC*, 312 So. 3d 168, 170 (Fla. 1st DCA 2021) (explaining that—in an appeal from an order granting a motion for sanctions—"[b]ecause additional judicial labor was required, the order determining entitlement was 'not a final order or an otherwise appealable non-final order,' and Appellants could not appeal until the trial court entered an order determining the amount of fees due."); *R.J. Reynolds Tobacco v. Ward*, 141 So. 3d 236, 240 (Fla. 1st DCA 2014) (noting—in an appeal from an order awarding costs and fees under the "offer of judgment" statute— that "[b]ecause the trial court did not decide on or award any amount of attorney's fees and costs on this ground in the final judgment, the order determining entitlement is a nonfinal,

5

nonappealable order, and the matter remains pending."). In those cases, the appealed orders were not final orders adjudicating the merits of the parties' claims. Rather, they were orders addressing collateral issues, such as sanctions and fees.

Here, our jurisdiction has been invoked to review an order that fully dispenses with the merits of the Center's public records suit. On its face, the order concludes all judicial labor as to the substantive public records claims and directs the production of any outstanding records within twenty days of the final hearing. The order is final, and it is appealable. That it reserves jurisdiction to address the ancillary matter of the resulting fee award does not defeat our jurisdiction over the final order's substantive rulings on the main cause of action in the public records suit. *Cf. City of Gainesville v. Commc'ns Workers of Am., Loc. No. 3170*, 371 So. 3d 938, 940 (Fla. 1st DCA 2022) ("To determine whether an order is final, courts generally ask 'whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected.' An order must have 'unequivocal language of finality' to be final, but no magic words are necessary." (citations omitted)); *Lutsch v. Smith*, 397 So. 2d 337, 341 (Fla. 1st DCA 1981) ("Attorney's fees may of course be taxed as costs incidental to the main cause of action if they are provided for by contract, agreement or statute. The entry of the judgment without the lower court acting on the reasonableness of fees does not later preclude the court from considering the question within a reasonable time after the appeal has been concluded." (citations omitted)).

The Center offers up a Second District decision to support its position. Although not binding on this court, we address the case because it helps illustrate the scope of our jurisdiction. In *Vitale v. Palmetto Charter Sch., Inc.*, our sister court considered an appeal from a trial court order denying a mandamus petition to compel the production of public records under Chapter 119. 378 So. 3d 680 (Fla. 2d DCA 2024). True, the Second District concluded that it did not yet have jurisdiction to "address the portion of the order that finds that the appellees are entitled to recover their attorneys' fees and costs." *Id.* at 681. But before explaining its lack of jurisdiction over the fee issue, the appellate court "affirm[ed] without further

6

comment the circuit court's final order denying Ben Vitale's petition for a writ of mandamus to compel production of public records." *Id.* at 681. The Second District thus exercised appellate jurisdiction over the final order adjudicating the merits of the public records claim. Likewise, we exercise our jurisdiction over the final order here.

## III.

Having explained our jurisdiction, we move on to the standard of review. The Center failed to style its complaint as a petition for writ of mandamus or as an action for declaratory relief, the two usual causes of action in public records disputes. That said, in its motion for an order to show cause, the Center discussed the mandamus standard and asked the circuit court to issue an alternative writ of mandamus. We therefore treat the underlying action as a petition for a writ of mandamus because that is the relief that the Center requested. *See, e.g.*, *Martin v. Lee*, 219 So. 3d 1024, 1025 (Fla. 1st DCA 2017) ("It is well settled that courts are not authorized to grant relief not requested in the pleadings.").

"To be entitled to mandamus relief, 'the petitioner must have a clear legal right to the requested relief, and the respondent must have an indisputable legal duty to perform the requested action.'" *Consumer Rts., LLC v. Bradford Cnty.*, 153 So. 3d 394, 397 (Fla. 1st DCA 2014). The duty must be ministerial and not discretionary for mandamus to lie. *Id.* Disclosure of nonexempt records is mandatory and not discretionary. *Id.* "Where the trial court's adjudication of a mandamus petition turns upon statutory interpretation, the standard of review is de novo." *Phillips v. Pritchett Trucking, Inc.*, 328 So. 3d 380, 382 (Fla. 1st DCA 2021); *see also Seigmeister v. Johnson*, 240 So. 3d 70, 73 (Fla. 1st DCA 2018) ("We review *de novo* the trial court's conclusion that these circumstances amounted to an unlawful refusal to provide the records under Florida's Public Records Act."

## IV.

Turning to the heart of this appeal, Florida's Constitution expressly provides "the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on

their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution." Art. I, § 24(a), Fla. Const. The Legislature has implemented this constitutional provision through Florida's Public Records Act, codified in Chapter 119, Florida Statutes.

Through the Public Records Act, the Legislature has reinforced that "[i]t is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person." § 119.01(1), Fla. Stat. (2022). Indeed, each public agency has a duty to provide access to public records. *Id.* To comply with that duty, "[e]very person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, *at any reasonable time, under reasonable conditions,* and under supervision by the custodian of the public records." § 119.07(1)(a), Fla. Stat. (2022) (emphasis added).

By use of the term "reasonable" in section 119.07(1), the Public Records Act contemplates there may be "reasonable custodial delay necessary to retrieve a record and review and excise exempt material." *Tribune Co. v. Canella*, 458 So. 2d 1075, 1078 (Fla. 1984). So when a public records request is received, the record custodian must review the records for any statutory exemptions that may apply and make any required redactions. *See* § 119.07(1)(d)–(f), Fla. Stat.; *Fla. Agency for Health Care Admin. v. Zuckerman Spaeder, LLP*, 221 So. 3d 1260, 1263 (Fla. 1st DCA 2017) ("[T]his Court has recognized a records custodian's duty to redact exempted portions of public records before they are released."). To that end, "[t]he Act demands prompt attention and a reasonable response time, not the quickest-possible response." *Siegmeister*, 240 So. 3d at 74.

On the record before us, we conclude the circuit court erred in finding the Office's response was unreasonable and in violation of Florida's public records. In suing an agency for violating Chapter 119, a plaintiff must "prove they made a specific request for public records, the [agency] received it, the requested public records exist, and the [agency] improperly refused to produce them in a timely manner." *Grapski v. City of Alachua*, 31 So. 3d 193, 196 (Fla. 1st DCA 2010) (*Grapski I*). In announcing its ruling, the circuit court misplaced the burden of proof on the defendant Office. The court

8

held that "the Executive Office of the Governor is not in compliance with Florida Statute 119 . . . *the Governor's office has not proven* any steps, direct steps taken to gather what this Court finds are public records regarding state business transacted on personal devices."

When examining the record under the correct burden of proof, the Center failed to establish a prima facie case for mandamus relief. Here, the final hearing (not initiation of the lawsuit) occurred only thirty-five days after the first public records request. The public records sought were not singular documents or already-composed files (like a court file where the records custodian merely accesses it electronically or pulls it off the shelf). This was a comprehensive request that, due to its scope, was going to take some time. For example, the Center wanted "[a]ll records sent to or received from Greg Abbott, or any agent, representative, employee, attorney or other individual or entity acting on behalf of Greg Abbott, or the State of Texas," regarding the alien relocation. This single part of the request alone would require the records custodian to consult many government officials to determine "whether such a record exists and, if so, the location at which the record can be accessed." § 119.07(1)(c), Fla. Stat. Only after that preliminary task was complete could the records custodian begin reviewing any responsive documents for required exemptions.

Additionally, the request for James Uthmeier's phone and text logs appears to include his personal devices. Presumably, not all phone calls or text messages from any personal devices would be public records—only those that were "made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." § 119.011(12), Fla. Stat. (2022); *see also State v. City of Clearwater*, 863 So. 2d 149, 155 (Fla. 2003) (finding that emails of public employees are not public records simply by being placed on a government computer). Sorting the public from the private in two weeks' worth of text messages and phone calls would not be quick.

The Office has a duty to timely fulfill all public records requests, but considering the magnitude and scope of the Center's request—which coincided with the ongoing statewide emergency of a major hurricane—the Office's response time cannot be

considered unreasonable. The Center's demand that its two robust records requests be completed within a week was unfeasible and impractical given the breadth of the requests and the circumstances surrounding it. Given the record before us, the Center has failed to demonstrate that the Office's response constituted an unreasonable delay that violated the Public Records Act.

V.

The Office did not challenge the circuit court's conclusion that it violated the Act by making unnecessary redactions without an exception. *See* Appellants' Initial Br. at 17 (explaining that the Office "is not appealing the circuit court's directive to reverse the provisional redactions in the records they had already provided"). We therefore reverse only the circuit court's conclusion that the Office unreasonably delayed production under the Public Records Act.

REVERSED in part, AFFIRMED in part, and REMANDED.

B.L. THOMAS and WINOKUR, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Ryan Newman, Executive Office of the Governor, General Counsel, Tallahassee; Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Nathan A. Forrester, Senior Deputy Solicitor General, Tallahassee for Appellants.

Andrea Flynn Mogensen, Law Office of Andrea Flynn Mogensen, P.A., Tallahassee; Matthew P. Farmer, of Farmer & Fitzgerald, P.A., Tampa for Appellee.