DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PALM BEACH COUNTY SHERIFF'S OFFICE** and **RIC L. BRADSHAW,** In His
Official Capacity as Palm Beach County Sheriff,
Appellants,

v.

**SUN-SENTINEL COMPANY, LLC,**
Appellee.

No. 4D17-1060

[September 6, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Donald W. Hafele, Judge; L.T. Case No. 50-2017-CA-002718-XXXX-MB.

Kara Berard Rockenbach of Methe & Rockenbach, P.A., West Palm Beach, for appellants.

Dana J. McElroy, Rachel Fugate and James J. McGuire of Thomas & LoCicero PL, Fort Lauderdale, for appellee.

HANZMAN, MICHAEL A., Associate Judge.

## Introduction

Appellants, Palm Beach County Sheriff's Office and Ric L. Bradshaw (collectively PBSO), appeal the trial court's final judgment ordering that they disclose the identity of witnesses to a murder pursuant to a public records request made by Appellee, Sun Sentinel Company, LLC (Sun-Sentinel). While we conclude that the trial court properly applied the relevant provisions of Florida's Public Records Act (Act) in force at the time of its decision, we nevertheless reverse because a recent statutory amendment to Chapter 119 now dictates that the identity of any witness to a murder is both exempt from disclosure and confidential "for 2 years after the date on which the murder is observed by the witness." § 119.071(2)(m)1., Florida Statutes (2017). We hold that this amendment applies retroactively and prevents disclosure of the information Sun-Sentinel requests.

**<u>Facts and Procedural History</u>**

In February 2017, a perpetrator who remains at large shot and killed Antoine Smith as he was driving on Interstate 95. Another vehicle with two occupants followed the suspect's car in an effort to obtain its license plate number. To deter these good Samaritans, the perpetrator fired shots which struck their vehicle but fortunately did not result in personal injury.

Shortly thereafter, Sun-Sentinel sent a public records request to PBSO, requesting, among other things, the names of the individuals who pursued the assailant. PBSO refused this request because, in its view: (a) the identity of witnesses to a crime was covered by the so-called "active criminal investigative information" exception to the Act; and (b) as these "witnesses" were not "victims" of the primary crime being investigated (the homicide), the statutory "exception" to this "exemption" – which compels disclosure of the identity of "the victim of a crime" – was not implicated. *See* § 119.011(3)(c)2., Fla. Stat. (2017) ("Criminal investigative information" shall not include "[t]he name, sex, age, and address of . . . the victim of a crime[.]"). Put simply, PBSO claimed that these good Samaritans should be considered "witnesses" – not "victims" – for purposes of applying the relevant provisions of the Act.

As required by chapter 119, Florida Statutes, the trial court held an expedited hearing on Sun-Sentinel's complaint to compel the release of this information. During this hearing, PBSO's counsel informed the trial court that: (a) there was an open and active homicide investigation pending; (b) the perpetrator – and others who may have been accomplices – were still at large and armed and dangerous; (c) the two individuals who witnessed the murder were able to identify the perpetrator; and (d) disclosure of these witnesses' names would put their lives in danger and compromise the investigation. Counsel, as well as a law enforcement witness, also advised the trial court that although these individuals were shot at, "they happen to be victims because they're witnesses," and PBSO was "treating them as witnesses more so than victims."

Sun-Sentinel maintained that these facts made no difference because: (a) exceptions to the Act must be narrowly construed; (b) information is exempt from disclosure *only* if expressly authorized by statute; (c) the Act unambiguously provides that the identity of "victims" is not "criminal investigative information" exempt from disclosure; (d) the individuals who gave chase had been shot at and were clearly "victims" of a crime; and (e) the Act does not contain an exception to disclosure for identifying information of "victims" who also happen to be "witnesses." Sun-Sentinel then urged the trial court to apply the Act, as plainly written, and compel disclosure.

At the conclusion of the expedited hearing, the trial court orally granted Sun-Sentinel's request and directed disclosure, finding that these individuals – while primarily witnesses – also were victims and, as a result, their identifying

2

information was specifically excluded from the definition of "active criminal investigative information" and hence outside the reach of this exemption. *See* § 119.011(3)(c)2., Fla. Stat. (2017). The trial court also granted PBSO's request for a stay pending appeal. On April 6, 2017 the trial court entered its final order on Sun-Sentinel's complaint which memorialized its earlier oral ruling. This appeal ensued. Our standard of review is de novo. *See Media Gen. Convergence, Inc. v. Chief Judge of the Thirteenth Judicial Circuit*, 840 So. 2d 1008, 1013 (Fla. 2003) (recognizing that a trial court's ruling concerning the status of a public record is subject to "de novo" review); *Rhea v. Dist. Bd. of Trustees of Santa Fe Coll.*, 109 So. 3d 851, 855 (Fla. 1st DCA 2013) ("Where purely legal issues of whether a document is a public record and subject to disclosure are involved, we have de novo review.").

## Analysis

Article I, Section 24(a) of the Florida Constitution grants "[e]very person . . . the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf." Chapter 119 of the Florida Statutes – known as the Public Records Act – implements this important constitutional tenet, and declares: "It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency." § 119.01(1), Fla. Stat. (2017). "The general purpose of the Florida Public Records Act is to open public records so that Florida's citizens can discover the actions of their government." *City of Riviera Beach v. Barfield*, 642 So. 2d 1135, 1136 (Fla. 4th DCA 1994).

Given that the right of access to public records is a "cornerstone of our political culture," *Bd. of Trustees, Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 124 (Fla. 2016) (citation omitted), it is well settled that the Act must be liberally construed in favor of access, and all exemptions must be limited to their stated purpose. *See Nat'l Collegiate Athletic Ass'n v. Associated Press*, 18 So. 3d 1201, 1206 (Fla. 1st DCA 2009); *Riviera Beach*, 642 So. 2d at 1136; *Bludworth v. Palm Beach Newspapers, Inc.*, 476 So. 2d 775, 779 n.1 (Fla. 4th DCA 1985). Also well settled is the principle that courts may not create exemptions to disclosure:

> [T]he Public Records Act . . . excludes any judicially created privilege of confidentiality and exempts from public disclosure only those public records that are provided by statutory law to be confidential or which are expressly exempted by general or special law.

*Wait v. Fla. Power & Light Co.*, 372 So. 2d 420, 425 (Fla. 1979). This is so because, as we explained in *Bludworth*, "[t]he rules of statutory interpretation

include the principle that when the legislature has enumerated exceptions it has shown that it intends to leave all unmentioned items subject to the law." 476 So. 2d at 779 n.1. *See also Tribune Co. v. Cannella*, 458 So. 2d 1075, 1078 (Fla. 1984) (declining to "write into the statute something that is not there"); *Morris Publ'g Grp., LLC v. Fla. Dep't of Educ.*, 133 So. 3d 957, 960 (Fla. 1st DCA 2013) (recognizing that a court may not "expand an exclusion to the public records act beyond what was plainly intended by the Legislature").

Unlike courts, the Legislature is constitutionally authorized to provide "for the exemption of records," *see* Fla. Const. art. 1 § 24(c), and it exercises this authority when necessary to further an important public policy. The exemption at issue here – codified in section 119.071(2)(c)1., Florida Statutes – authorizes a public agency to refuse access to "[a]ctive criminal intelligence information and active criminal investigative information." § 119.071(2)(c)1, Fla. Stat. (2017). This exemption furthers "the critical importance of preserving the confidentiality of police records surrounding and compiled during an active criminal investigation," *Riviera Beach*, 642 So. 2d at 1136, and is intended to "prevent premature disclosure of information during an ongoing investigation being conducted in good faith by criminal justice authorities." *Barfield v. City of Ft. Lauderdale Police Dep't*, 639 So. 2d 1012, 1017 (Fla. 4th DCA 1994); *see also Fla. Freedom Newspapers, Inc. v. Dempsey*, 478 So. 2d 1128, 1131 (Fla. 1st DCA 1985) ("[T]he legislature fully comprehended that disclosure of the status of a criminal investigation by requiring production of particular information developed during its progress would often impede the development of new leads and prevent successful conclusion of the investigation and the arrest of the offender.").

The Act defines "[c]riminal intelligence information" to include "information . . . collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity." § 119.011(3)(a), Fla. Stat. (2017). "Criminal investigative information" is defined to include "information . . . compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance." § 119.011(3)(b), Fla. Stat. (2017). While information secured by law enforcement that identifies victims of a crime clearly falls within these provisions, the Act, with certain exceptions not relevant here, provides that "[c]riminal intelligence information" and "criminal investigative information" shall not include "[t]he name, sex, age, and address of a person arrested or of the victim of a crime[.]" § 119.011(3)(c)2., Fla. Stat. Thus, the statute, as plainly written, excepts victim information from what would otherwise be this applicable exemption from disclosure.

Despite the plain meaning of this exception to the exemption, PBSO argued below, and continues to argue before us, that the only victim of the crime being

4

investigated was Mr. Smith, and that the good Samaritans who pursued the shooter were primarily witnesses. And the primary crime – according to PBSO – was the homicide. PBSO therefore asserts that despite being shot at as part of this single criminal episode, these individuals should be considered witnesses covered under the exemption, but not victims for purposes of the exception. We disagree.

PBSO's argument rests upon the premise that only a single crime occurred here, and that despite being shot at the good Samaritans who pursued the assailant were not victims of a crime because another and more deadly crime occurred moments earlier. These individuals, however, were clearly victims of "a" crime and thus their identifying information fits within the exception to the exemption.

Acceptance of PBSO's argument would also – as a matter of statutory construction – thwart legislative intent because, as a practical matter, many – if not most – victims of crimes are also witnesses. *See Searcy, Denney, Scarola, Barnhart & Shipley, etc. v. State*, 209 So. 3d 1181, 1189 (Fla. 2017) ("All parts of the statute must be given effect, and the Court should avoid a reading of the statute that renders any part meaningless."). But the Legislature chose to make victim identification information subject to disclosure even if the victim is also a witness to the crime. It is not this Court's prerogative to question the wisdom of that policy choice. *See* Benjamin N. Cardozo, THE PARADOXES OF LEGAL SCIENCE, 125 (1928) ("[W]hen the legislature has spoken, and declared one interest superior to another, a court must subordinate her personal belief to that so declared"); *Robinson v. State*, 205 So. 3d 584, 591 (Fla. 2016) ("[L]egislative intent must not be determined based on 'this Court's view of the best policy.'" (citation omitted)). So if public policy favors protecting "victim/witness" information from disclosure, that policy must be implemented by the Legislature, not this Court. *Forsberg v. Hous. Auth. of City of Miami Beach*, 455 So. 2d 373, 374 (Fla. 1984) ("Any change, exception, or modification [to the Public Records Act] must, of necessity, come from the legislature.").

The trial court properly applied section 119.011(3)(c)2., as plainly written, and correctly concluded that the names of these individuals were not exempt from disclosure as criminal intelligence or investigative information. *See Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) ("[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (citation omitted)).

This conclusion, however, does not end our analysis because the Legislature recently amended chapter 119 to provide:

5

Criminal intelligence information or criminal investigative information that reveals the personal identifying information of a witness to a murder, as described in s. 782.04,[1] is confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution for 2 years after the date on which the murder is observed by the witness. A criminal justice agency may disclose such information:

    a. In the furtherance of its official duties and responsibilities.

    b. To assist in locating or identifying the witness if the agency believes the witness to be missing or endangered.

    c. To another governmental agency for use in the performance of its official duties and responsibilities.

    d. To the parties in a pending criminal prosecution as required by law.

§ 119.071(2)(m)1., Fla. Stat. (2017).

Inspiring this amendment was the Legislature's finding that:

it is a public necessity that personal identifying information of a witness to a murder, as described in s. 782.04, Florida Statutes, be made confidential and exempt from s. 119.07(1), Florida Statutes, and s. 24(a), Article I of the State Constitution for 2 years after the date on which the murder is observed by the witness. The judicial system cannot function without the participation of witnesses. Complete cooperation and truthful testimony of witnesses is essential to the determination of the facts of a case. The public disclosure of personal identifying information of a witness to a murder could have an undesirable chilling effect on witnesses stepping forward and providing their eyewitness accounts of murders. A witness to a murder may be unwilling to cooperate fully with law enforcement officers if the witness knows his or her personal identifying information can be made publicly available. A witness may be less likely to call a law enforcement officer and report a murder if his or her personal identifying information is made available in connection with the murder that is being reported or under investigation. The Legislature further finds that a witness could become the subject of intimidation tactics or threats by the perpetrator of the murder if the witness's personal identifying information is publicly available. For these reasons, the Legislature finds that it is a public necessity that the personal identifying

---

[1] Section 782.04 is the homicide statute.

information of a witness to a murder, as described in s. 782.04, Florida Statutes, be made confidential and exempt from public records requirements.

Ch. 2017-11, § 4, Laws of Fla. (2017).[2]

The effect of this legislative amendment to section 119.071 is that identifying information of a witness to a murder is not only exempt, which gives law enforcement agencies discretion in disclosing or not disclosing the information, but also confidential, which means that the agency has no discretion except for in the limited scenarios provided for in the amended statute. *See WFTV, Inc. v. Sch. Bd. of Seminole*, 874 So. 2d 48, 53 (Fla. 5th DCA 2004) ("There is a difference between records the Legislature has determined to be exempt from The Florida Public Records Act and those which the Legislature has determined to be exempt from The Florida Public Records Act and confidential. If information is made confidential in the statutes, the information is not subject to inspection by the public and may only be released to the persons or organizations designated in the statute.").

This newly enacted exemption is free-standing and it therefore makes no difference whether a witness to a murder is also a victim whose identity is not *itself* considered criminal intelligence or investigative information, as both provisions of the Act may be easily harmonized. *See Woodgate Dev. Corp. v. Hamilton Inv. Trust*, 351 So. 2d 14, 16 (Fla. 1977) ("Where possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act."). As we pointed out earlier, while section 119.011(3)(c)2. clearly provides that victim identification information is not considered "criminal intelligence information" or "criminal investigative information," when information compiled by law enforcement agencies (i.e., criminal investigative materials) "reveals the personal identifying information of a witness to a murder" that information is protected from disclosure even if that witness also happens to be a victim. Put simply, just as a victim's information is subject to disclosure even if that victim also happens to be a witness, information regarding a witness to a murder is protected even if that witness also happens to be a victim. The two provisions are completely compatible and, even if they were not, the specific statute protecting the identity of witnesses to a murder would control. *See State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1073 (Fla. 2006); *Rochester v. State*, 95 So. 3d 407, 409 (Fla. 4th DCA 2012) (stating that a specific statute is controlling over a more general statute covering the same general subject, as the former is considered to be an exception to the latter).

The information Sun-Sentinel requests falls comfortably within the newly enacted exemption, and we conclude that this legislation applies retroactively.

---

[2] The amendment did not go into effect until after Sun-Sentinel made its initial request.

*See City of Orlando v. Desjardins*, 493 So. 2d 1027, 1028 (Fla. 1986) (finding that exemption of Public Records Act enacted after cause of action accrued applied retroactively because statute was remedial and "should be retroactively applied in order to serve its intended purposes"); *News-Press Publ'g Co. v. Kaune*, 511 So. 2d 1023, 1026 (Fla. 2d DCA 1987) ("[W]e believe section 112.08(7) [exempting certain medical records from Chapter 119] is remedial and thereby retroactive, [even though] we do not have to so determine."); *Roberts v. Butterworth*, 668 So. 2d 580, 581-82 (Fla. 1996) (holding that work product exemption in section 119.07(3)(l) is remedial in nature and applies retroactively).[3]

## Conclusion

Having determined that the information sought by Sun-Sentinel is not subject to disclosure, the trial court's final judgment is reversed. On remand, the trial court is directed to enter final judgment in favor of PBSO.

*Reversed and remanded with instructions.*

CIKLIN and DAMOORGIAN, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

---

[3] For purposes of a retroactivity analysis, the case at hand is indistinguishable from *Roberts*. There, the newly enacted exemption was based upon a public necessity to exempt the work product of the Attorney General's Office from disclosure during post-conviction proceedings, as such premature disclosure could "interfere with the effective and efficient administration of government." *Roberts*, 668 So. 2d at 581 n.5. Here, the Legislature enacted the "murder-witness" exemption to further the compelling public purpose of securing cooperation and truthful testimony of witnesses, and it found that the premature public disclosure of identifying information "of a witness to a murder could have an undesirable chilling effect on witnesses stepping forward and providing their eyewitness accounts of murders." Ch. 2017-11, § 4, Laws of Fla. (2017). So just as the *Roberts* court concluded that the "work product" exemption was remedial legislation that applied retroactively, we find that the "murder-witness exemption" applies here.