DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RASIER-DC, LLC,**
Appellant,

v.

**B&L SERVICE, INC.,** a Florida corporation and **BROWARD COUNTY, FLORIDA,** a Political Subdivision,
Appellees.

No. 4D16-3070

[January 10, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Sandra Perlman, Judge; L.T. Case No. CACE16-002723.

Alyssa M. Reiter and Jordan S. Cohen of Wicker Smith O'Hara McCoy & Ford, P.A., Fort Lauderdale, for appellant.

Daniel L. Wallach and Allen M. Levine of Becker & Poliakoff, P.A., Fort Lauderdale, and Mark J. Stempler of Becker & Poliakoff, P.A., West Palm Beach, for appellees.

MAY, J.

Business competition and a battle between government transparency and entrepreneurial confidentiality lay the foundation for this appeal. Uber, the intervenor in a suit over a public records request, appeals an order that required Broward County to produce redacted reports in response to a broader request for records. Uber argues the trial court erred in granting a rehearing and ordering Broward County to produce redacted Uber reports to Yellow Cab.[1] We disagree and affirm the order.

Uber and Broward County entered into a license agreement governing Uber's services at the airport and Port Everglades. Article 2.6.4 of the agreement addressed Uber's monthly self-reporting requirements. Article

___

[1] Rasier is a subsidiary of Uber Technologies, Inc. It licenses technology from Uber Technologies, Inc., and then licenses it to Uber drivers. While Uber Technologies, Inc., is not a party to the case, Rasier is referred to as Uber for ease of understanding.

9.4 required Broward County to maintain the confidentiality of Uber's trade secret information and assert its exempt status in response to a public records request.

Uber's monthly reports contained both aggregate and granular data. The aggregate data is the number of pickups and drop-offs at the airport and seaport, "multiplied by the fee in each of those zones." The granular data is information on every pickup and drop-off, including a time stamp, the longitude and latitude, and the first three characters of the driver's license plate which identifies the individual. Uber marked the reports as containing trade secret information, exempt from the Public Records Act.

Yellow Cab made a public records request to Broward County for: "**All reports or documents** reflecting pick-ups by Rasier-DC, LLC or Uber at the [airport], and the sums of money paid or owing to [the county] for those trips, beginning in October, 2015 and through the present." (Emphasis added). The county responded that any reports marked trade secret would not be disclosed without Uber's authorization, pursuant to the license agreement, and produced a redacted set.

Yellow Cab then filed a complaint against Broward County for violating Florida's Public Records Act, seeking un-redacted monthly reports on Uber's pickups at the airport. Uber then moved to intervene as the owner of the trade secret information and real party in interest. The trial court granted the motion to intervene.

After an evidentiary hearing, the court ordered that Broward County had complied with the public records request and reserved ruling as to whether the requested records were trade secrets. The court later found the information was protected trade secrets and exempt from disclosure under Florida's Public Records Act.

Yellow Cab moved for rehearing, arguing the trial court had overlooked that the request was limited to the amount of money paid to the county and the number of pickups.[2] The trial court conducted an *in camera* inspection of the un-redacted documents, and found

---

[2] While Yellow Cab's president and counsel later stated that the company would be okay with not receiving all of the information in the reports, Yellow Cab initially requested the entirety of the reports and its counsel specifically told the trial court that Yellow Cab was entitled to "all the information in the reports." At oral argument, Yellow Cab again claimed its request was limited, but the wording of its request belies that assertion.

2

that the aggregate number of pick-ups and the sum of money paid by [Uber] to the County as a usage fee at the [airport] does not constitute trade secret information such that it would be exempt from public disclosure. The remaining information in the reports, however, including the longitude and latitude and the specific dates and times of pick-ups and drop-offs, and the first three characters of license plates of [Uber]'s drivers . . . does constitute trade secret information that is exempt from public disclosure.

The trial court ordered Broward County to produce the non-exempt information.

On appeal, Uber argues the trial court abused its discretion in granting rehearing and requiring production of the redacted reports. We disagree. The trial court correctly determined, after an *in camera* review of the documents, "the aggregate number of pick-ups and the sum of money paid by [Uber] to the County as a usage fee at the [airport did] not constitute trade secret information such that it would be exempt from public disclosure."

Florida policy requires "all state, county, and municipal records" to be open for inspection and copying by any person. § 119.01(1), Fla. Stat. (2016). Public custodians must allow a requested record to be inspected and copied by "any person desiring to do so, at any reasonable time, [and] under reasonable conditions." § 119.07(1)(a), Fla. Stat. (2016). The Public Records Act is construed liberally and favors openness. *Christy v. Palm Beach Cty. Sheriff's Office*, 698 So. 2d 1365, 1366 (Fla. 4th DCA 1997).

In a similar case, a federal district court found that Lyft's commissions and revenue from certain products were not trade secrets. *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, 2016 WL 3654454, at *2 (N.D. Cal. June 23, 2016).

While the algorithms and "proprietary price models" that Lyft uses to set its fares and the rate of Prime Time premiums and, in turn, its commissions from those moneys *are* trade secrets, the bare *output* of those algorithms and price models (i.e., the total amount of commissions taken) is not. Though the manner in which Lyft determines its pricing is an important part of its competitive strategy, its revenue is not strategy but rather the *result* of that strategy.

*Id.*

3

Several non-Florida cases have also held that sales volume, income statements, and gross sales of a corporation are not trade secrets. *See Luigino's, Inc. v. Peterson*, 317 F.3d 909 (8th Cir. 2003); *Matosantos Commercial Corp. v. SCA Tissue N. Am., LLC*, 369 F. Supp. 2d 191 (D.P.R. 2005); *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415 (Mass. 1991).[3]

"A public record cannot be transformed into a private record merely because an agent of the government has promised that it will be kept private." *Nat'l Collegiate Athletic Ass'n v. Associated Press*, 18 So. 3d 1201, 1208 (Fla. 1st DCA 2009) (citing *Browning v. Walton*, 351 So. 2d 380, 381 (Fla. 4th DCA 1977)). The right to examine public records belongs to the public. *Nat'l Collegiate Athletic Ass'n*, 18 So. 3d at 1209.

In short, the total number of pickups and the fees paid to Broward County do not meet the definition of trade secrets under sections 688.002(4) or 812.081(1)(c), Florida Statutes (2016). Nothing indicates the fees or total pickups provide an advantage to Yellow Cab or that Uber derives independent economic value from keeping that information secret. The trial court carefully reviewed the documents and complied with Florida's Public Records law in requiring production of redacted records that were not exempt.

*Affirmed.*

TAYLOR and KUNTZ, JJ., concur.

*　　*　　*

**Not final until disposition of timely filed motion for rehearing.**

---

[3] The dollar figure along with the number of pickups does not reveal Uber's fare pricing or revenue. Payment to the driver, cost to the rider, and revenue to the company differ for each of Uber's services. Without knowing the level of service provided, a competitor would not know the type of riders being serviced. Nor does the monthly fee to the county and the total number of pickups reveal the number of miles traveled or the duration of each pickup.