DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARTIN E. O'BOYLE** and **ASSET ENHANCEMENT, INC.,**
Appellants,

v.

**TOWN OF GULF STREAM, SCOTT MORGAN, JOHN C. RANDOLPH, ROBERT A. SWEETAPPLE,** and **JOANNE O'CONNOR,**
Appellees.

No. 4D17-2725

[October 24, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 50-2015-CA-001737-XXXX-MB.

Robert Rivas of Sachs Sax Caplan, P.L., Boca Raton, (withdrawn as counsel after filing brief), and Jonathan R. O'Boyle of The O'Boyle Law Firm, P.C., Deerfield Beach, for appellants.

Hudson C. Gill and Jeffrey L. Hochman of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for appellees Town of Gulf Stream, Scott Morgan, John C. Randolph, and Joanne O'Connor.

Therese A. Savona and Kathryn L. Ender of Cole, Scott & Kissane, P.A., Miami, for appellee Robert A. Sweetapple.

KLINGENSMITH, J.

Appellants Martin E. O'Boyle and Asset Enhancement, Inc., ("Asset") appeal the trial court's dismissal of their Complaint to Enforce Florida's Sunshine and Public Records Laws and for Declaratory and Injunctive Relief against the Town of Gulf Stream ("the Town") and other affiliated individuals (collectively, "appellees").[1] We find the trial court properly dismissed the Sunshine Law claims, as well as the claims arising from alleged public meeting violations under Chapter 286, Florida Statutes, and affirm on those issues without further comment. However, we reverse the

---

[1] Appellants filed their complaint against several other defendants, including the Town's mayor, and two of the Town's attorneys.

dismissal of appellants' claims under the Public Records Act, and remand for further proceedings.

In their complaint, Asset and O'Boyle alleged separate Public Records Act violations regarding two public records requests: (1) for copies of bills and payments sent to the Town for services rendered by the Town's attorney; and (2) for copies of text messages sent or received by the Town's Mayor since the time of his appointment. Asset alleged that the Town produced illegitimately redacted copies of the bills and payments. In another claim, O'Boyle asserted that the Town produced "a cherry picked" selection of texts which painted O'Boyle "in a negative light." After another records request that produced additional, previously unseen texts, O'Boyle insisted that the initial release was incomplete and that the Town and Mayor deliberately concealed records from the public.

Appellants alleged that the Town violated Article I, section 24 of the Florida Constitution and Chapter 119, Florida Statutes ("the Public Records Act" or "the Act"). They requested the trial court order the Town and others to allow the inspection, copying, and photographing of the requested records after a hearing held pursuant to section 119.11, Florida Statutes (2017). They then filed a Motion for Mandatory In-Camera Inspection of Record asking that the court review the redacted legal bills to determine if they fell within the "work product" exception of the Public Records Act, as the Town claimed. A week later, the Town turned over the bills and payment records at issue without any redactions.

Appellees each filed a motion to dismiss, and the trial court held a hearing on the parties' motions. The court dismissed the complaint and granted ten days for amendment. Instead of amending, appellants requested that a final judgment be entered, and the trial court obliged.

"A motion to dismiss tests whether the plaintiff has stated a cause of action." *Bell v. Indian River Mem'l Hosp.*, 778 So. 2d 1030, 1032 (Fla. 4th DCA 2001). An appeal of a trial court's ruling on a motion to dismiss is an issue of law subject to *de novo* review. *See id.* The trial court's decision regarding a motion to dismiss is limited to a consideration of the allegations within the four corners of the complaint, and such allegations must be viewed in the light most favorable to the non-moving party. *See id.* Likewise, "[t]he determination of whether something is a public record is a question of law subject to *de novo* review and is determined on a case-by-case basis." *Bent v. State*, 46 So. 3d 1047, 1049 (Fla. 4th DCA 2010); *accord State v. City of Clearwate*r, 863 So. 2d 149, 151 (Fla. 2003); *Media Gen. Convergence, Inc. v. Chief Judge of the Thirteenth Jud. Cir.*, 840 So. 2d 1008, 1013 (Fla. 2003).

The right of access to public records is a "cornerstone of our political culture," *Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 124 (Fla. 2016) (further citation omitted); therefore, the Public Records Act "must be liberally construed in favor of access, and all exemptions must be limited to their stated purpose." *Palm Beach Cty. Sheriff's Office v. Sun-Sentinel Co., LLC*, 226 So. 3d 969, 972 (Fla. 4th DCA 2017).

"Article I, Section 24(a) of the Florida Constitution grants '[e]very person . . . the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf.'" *Id.* (alterations in original). The Act "implements this important constitutional tenet, and declares: 'It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency.'" *Id.* (quoting § 119.01(1), Fla. Stat. (2017)); *accord Rasier-DC, LLC v. B & L Serv., Inc.*, 237 So. 3d 374, 376 (Fla. 4th DCA 2018). "Public custodians must allow a requested record to be inspected and copied by 'any person desiring to do so, at any reasonable time, [and] under reasonable conditions.'" *Id.* (alterations in original) (quoting § 119.07(1)(a), Fla. Stat. (2016)).

To set forth a cause of action under the Act, a party must "prove they made a specific request for public records, the City received it, the requested public records exist, and the City improperly refused to produce them in a timely manner." *Grapski v. City of Alachua*, 31 So. 3d 193, 196 (Fla. 1st DCA 2010). "Public records" include "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." § 119.011(12), Fla. Stat. (2017); *accord Braddy v. State*, 219 So. 3d 803, 820 (Fla. 2017).

In line with these authorities, we consider the requests for the text messages and the attorney bills and payments separately.

*Text Messages as Public Records*

This is an action against a municipality to obtain records that, while potentially related to the Town's public business, are in the exclusive control of one of their elected officials. An elected official's use of a private cell phone to conduct public business via text messaging can create an

electronic written public record subject to disclosure. However, for that information to indeed be a public record, an official or employee must have prepared, owned, used, or retained it within the scope of his or her employment or agency. An official or employee's communication falls "within the scope of employment or agency" only when their job requires it, the employer or principal directs it, or it furthers the employer or principal's interests.

Therefore, not all written communications sent or received by public officials or employees of a government agency are public records subject to disclosure upon request under the Act. *See City of Clearwater*, 863 So. 2d at 150. The reach of the Act is to those records related to the employee or official's public responsibilities. For instance, "employees do not generally act within the scope of employment when they text their spouse about working late or discuss their job on social media. Nor do they typically act within the scope of employment by creating or keeping records purely for private use, like a diary." *See Nissen v. Pierce Cty.*, 357 P.3d 45, 54 (Wash. 2015). None of these examples would result in a public record in the usual case.

Illustratively, in *City of Clearwater*, a Times Publishing Company ("Times") reporter requested copies of all e-mails sent or received over the City's network by two City employees throughout the course of a year. 863 So. 2d at 150. The employees sorted their e-mails into private and public categories, and the City released the "public" emails to the reporter. *Id.* However, Times filed an action asserting it was entitled to *all* emails on the City's computers. *Id.* at 150-51. The trial court ordered all e-mails to be obtained, preserved, and secured from destruction. *Id.* After a final hearing, the trial court denied Times' requests for a writ of mandamus and permanent injunctive relief. *Id.* On appeal, the Second District affirmed the lower court's order, but did so without prejudice to Times seeking an in-camera review of all e-mails, while also ruling that "private" e-mails were outside the Act's scope. *Id.*

On review, the Florida Supreme Court agreed with the Second District that "[b]ased on the plain language of section 119.011(1), . . . 'private' or 'personal' e-mails 'simply fall[] outside the current definition of public records.'" *Id.* at 153 (alteration in original) (quoting *Times Publ'g Co. v. City of Clearwater*, 830 So. 2d 844, 847 (Fla. 2d DCA 2002)). The Court concluded that not "all e-mails transmitted or received by public employees of a government agency are public records pursuant to [the Act] by virtue of their placement on a government-owned computer system." *Id.* at 150 (alteration in original); *accord Butler v. City of Hallandale Beach*, 68 So. 3d 278, 280-81 (Fla. 4th DCA 2011).

To comply with the dictates of the Act, the governmental entity must proceed as it relates to text messaging no differently than it would when responding to a request for written documents and other public records in the entity's possession—such as e-mails—by reviewing each record, determining if some or all are exempted from production, and disclosing the unprotected records to the requester. Where specified communications to or from individual state employees or officials are requested from a governmental entity—regardless of whether the records are located on private or state accounts or devices—the entity's obligation is to conduct a reasonable search that includes asking those individual employees or officials to provide any public records stored in their private accounts that are responsive to a proper request. The ability of public officials and employees to use cell phones to conduct public business by creating and exchanging public records—text messages, e-mails, or anything else—is why a process must be available to offer the public a way to obtain those records and resolve disputes about the extent of compliance. Without such a process, the Act cannot fulfill the people's mandate to have full access to information concerning the conduct of government on every level.

When judicial intervention is requested to test the adequacy of the entity's response, the court can make the requisite determination of relevance and privilege as to any contested record. And like pre-trial discovery conducted in the context of litigation, the text messages or other records that may ultimately be produced will be narrowly confined to those found to be "relevant" and "non-privileged."

Strong public policy reasons also support the conclusion that electronic information stored on privately-owned devices may be subject to disclosure under the Public Records Act. The purpose of both Article I, section 24 and Chapter 119 is to ensure that citizens may review (and criticize) government actions. That purpose would be defeated if a public official could shield the disclosure of public records by conducting business on a private device.

We acknowledge that the public's statutory right to public records does not extinguish an individual's constitutional and statutory rights in private information. But we do not read Article I, section 24 or the Public Records Act as a zero-sum choice between personal liberty and government accountability. Accordingly, the Town's reasons for its lack of disclosure, whether for reasons related to relevancy, the application of possible privileges, or otherwise, necessitates a judicial review of the available communications to identify those which are subject to disclosure and any

defenses to allegations of noncompliance. Such review would ensure that a meaningful determination of relevancy and privilege can be made, disputes can be expeditiously resolved, and all legitimate privacy concerns safeguarded.

Clearly, some of the text messages reviewed by the trial court during this process could include personal or private information, and some could be the subject of legitimate claims of privilege. Deciding which ones may remain private was the very purpose of the protocol ratified by the Supreme Court's *City of Clearwater* decision—review these communications in-camera and afford an opportunity to raise objections to protect against disclosure of irrelevant, privileged, or otherwise non-discoverable materials. To avoid that process altogether, assuming the scope of the request was reasonable, it would have been incumbent on appellees to show some controlling authority that the Public Records Act did not apply, or otherwise prohibited, the submission of the text messages to the court for an in-camera review. No such showing was made here.

Regardless of whether any of the texts are ultimately deemed subject to disclosure, each element of O'Boyle's public records claim as stated in the complaint regarding the text messages was sufficiently pled. *See Grapski*, 31 So. 3d at 196; *Brandon*, 141 So. 2d at 279. First, O'Boyle stated in the complaint that a *specific request* was made for all texts over a certain period of time. *See Grapski*, 31 So. 3d at 196. Second, the Town *received the request* because it responded with a release of certain texts deemed to be public records. *See id.* Third, the requested public records *texts existed*, as was evident by their release and inclusion as an exhibit with the complaint. *See id.* Fourth, O'Boyle complained that a later response by the Town revealed *several additional texts that were not released upon the first request*, leading to the belief that there may be more available. *See id.*

Whether O'Boyle's individual claim proceeds further may depend on the outcome of that in-camera review. But for now, we reverse the dismissal on this count of appellants' complaint and remand for the trial court to conduct an in-camera inspection of the disputed text messages sent to and from the Town's Mayor to determine whether any qualify as public records.

### *Production of Redacted Attorney Bills*

Following Asset's public records request for attorney billing records, the Town responded by citing work product privilege and only provided redacted copies of the requested records. After appellants filed a motion for in-camera review, but before the dismissal hearing began, the Town

acquiesced and provided Asset with a complete set of unredacted billing records. As a result, the Town asserts this issue on appeal is now moot and should be dismissed. We disagree.

"An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect." *Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). "A moot case generally will be dismissed." *Id.* But there are at least three instances where an otherwise moot case will not be dismissed: (1) when questions of great public importance are raised, (2) when issues are likely to recur, or (3) *"if collateral legal consequences that affect the rights of a party flow from the issue to be determined." Id.* (emphasis added)*; accord Paul Jacquin & Sons, Inc. v. City of Port St. Lucie*, 69 So. 3d 306, 308 (Fla. 4th DCA 2011).

We find the case of *Cookston v. Office of Pub. Def.*, 204 So. 3d 480 (Fla. 5th DCA 2016), to be analogous. There, Cookston filed a petition for writ of mandamus seeking the trial court to compel the production of correspondence from the Public Defender's Office ("PDO") and an assistant public defender pursuant to the Act. *Id.* at 481. He also petitioned for costs. *Id.* The trial court found the petition for writ of mandamus moot because the PDO provided the requested documents to Cookston in full shortly after it was filed. *Id.* On appeal, the Fifth District held, "Cookston's petition was not moot because the court did not determine whether he was entitled to reasonable costs of enforcement pursuant to section 119.12." *Id.* The matter was reversed and remanded for the trial court to determine whether the PDO's delay in providing the records entitled Cookston to an award of costs. *Id.; accord Mazer v. Orange Cty.*, 811 So. 2d 857, 858-60 (Fla. 5th DCA 2002).

Similar to *Cookston* and *Mazer*, Asset requested records and, after filing a claim with the trial court, the records were provided in their requested form. *See Cookston*, 204 So. 3d at 481; *Mazer*, 811 So. 2d at 858-60. While it was argued in *Cookston* and *Mazer* that the issues were rendered moot, the appellate court held that collateral legal consequences affecting the rights of a party still existed—namely, the issuance of fees and costs based on improperly refused, completed, or delayed records requests. *See Cookston*, 204 So. 3d at 481; *Mazer*, 811 So. 2d at 860; *Godwin*, 593 So. 2d at 212.

Like those cases, we find this claim was not moot due to the presence of collateral issues yet to be decided by the trial court—specifically, a determination whether the Town's initial redactions of the bills were proper, and whether any reasonable attorney's fees, costs, and expenses,

should be awarded.  We therefore reverse and remand for a determination of those issues.

*Affirm in part; reverse in part; and remand for further proceedings consistent with this opinion.*

TAYLOR and KUNTZ, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**