**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12285

————————————————

DAVID BEAR,

*Plaintiff-Appellee,*

*versus*

ESCAMBIA COUNTY BOARD OF COUNTY
COMMISSIONERS,

*Defendant,*

DOUGLAS B. UNDERHILL,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cv-04424-MCR-HTC

————————————————

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

David Bear and Douglas Underhill are longtime adversaries in local politics in Escambia County in Northwestern Florida. Douglas Underhill, a former county commissioner in Escambia County, appeals the district court's ruling that he unlawfully withheld public records in response to requests David Bear filed. After careful consideration and with the benefit of oral argument, we affirm the decision of the district court ordering Underhill to pay attorneys' fees to David Bear as a sanction for unlawfully withholding public records.

## I.    BACKGROUND

Bear is the CEO of a wholesale alcohol distributor covering Northwestern Florida, including Escambia County on the Alabama border. He and members of his family are deeply involved in local politics. For instance, they serve on such boards as the Pensacola-Escambia Development Council ("PEDC") and Tourist Development Commission.

For his part, Underhill was a member of the Escambia County Board of County Commissioners ("the Board") for eight years, ending in 2022. He sat alongside Bear on the PEDC and Tourist Development Commission. Underhill also often took political positions contrary to those of Bear and his family.

During most of the time relevant to this case, Escambia County had policies restricting commissioners' use of social media. From 2009 to May 16, 2019, a policy prohibited commissioners from "discussing county business" on social media sites.

Still, the policy allowed a commissioner to post an article or comment on social media under his actual name so long as no other commissioner had also posted a comment or response. When commissioners made those sorts of posts, the policy required the county to retain a copy. Starting in 2012, another policy "prohibited County employees, including commissioners, from conducting County business on personal social media accounts but allowed an official page to be established by approval of the County administrator."

Despite these policies, while Underhill was serving as a county commissioner, he used his personally owned Facebook account to interact with constituents and provide them with information on matters involving the Board and county business. He publicly acknowledged that he was out of compliance with the social media policy. Through his personal Facebook account, he operated both a quasi-official "Commissioner Doug Underhill" page and a personal "Douglas Underhill" page.

As he conveyed in testimony at a hearing and a deposition in this case, Underhill viewed social media as "one of the ways he carried out his duties as a Commissioner." He also acknowledged that he had a duty to preserve public records related to his work as a commissioner, even if those records were on a personal computer or cell phone.

Underhill had one Facebook account titled, "Douglass Underhill." That account included pages titled "Douglas Underhill"

and "Commissioner Doug Underhill" (the "Commissioner Page"). Through early 2019, Underhill operated the Commissioner Page as a "public forum" and informed visitors to the page that "[e]verything here is public record." But by later that year, Underhill transitioned to seeking to use the Commissioner Page as an electronic bulletin board on which he could post information about county business for his constituents.

In posts and in direct messages with constituents, he frequently wrote about issues facing the county, votes he'd taken, or other political figures. Underhill used the settings on the administrator's page to selectively filter and hide certain comments.

Underhill targeted Bear's family using his Facebook page. In Facebook messages with a constituent, Underhill stated that Bear's father was "buying influence" and suggested that he had improperly received a tax break.

Bear suspected—correctly—that some of Underhill's hidden posts and messages disparaged him and his family. To obtain these posts and messages, he made a trio of public-records requests to the county and Underhill. Bear asked for all documents from Underhill discussing the county's social media policy, Facebook messages discussing him or his family, and all posts on the personal Douglas Underhill page that relate to Underhill's work as a commissioner.

The county responded to the requests. Because the messages and posts were under Underhill's control and Underhill was

not willing to fully comply with the requests, Bear contended that the responses were incomplete.

So Bear filed suit.  As part of discovery, Underhill produced around 12,000 pages of Facebook records.  Underhill continued to contend, though, that none of the materials from his Facebook account were public records because he personally owned and maintained the account.  Underhill withheld more than 24,000 pages of Facebook records.

So Bear filed a motion to compel the pages Underhill withheld.

The magistrate judge held a hearing on Bear's public-records requests and concluded that Underhill was an "agency" subject to the Florida Public Records Act because he was acting on behalf of the Board by communicating with constituents on county matters involving the Board.  The magistrate judge determined that posts and messages about matters involving the Board were public records that Underhill must disclose.

After inspecting the disputed documents *in camera*, the magistrate judge recommended compelling production of 129 pages from Underhill's Facebook account as public records.  The magistrate judge identified another tranche as a mix of public records and personal messages and directed Underhill to redact them.

In the same Report and Recommendation, the magistrate judge recommended not awarding Bear statutory attorney's fees

under the Florida Public Records Act, Fla. Stat. § 119.011 *et seq.* ("the Act"). In explanation, the magistrate judge reasoned that because the Board did not have access to Underhill's Facebook pages, it did not unlawfully withhold the public records. She also recommended holding that Underhill should not be required to pay attorney's fees to Bear because there was reasonable uncertainty about whether Underhill qualified as an "agency" under the Public Records Act.

The district court adopted the Report and Recommendation as to the issue of the motion to compel and ordered Underhill to produce the additional pages. It tabled the other issue—whether Underhill should have to pay attorney's fees for unlawfully withholding the documents—until after summary-judgment briefing.

On March 25, 2023, the district court revisited the issue and granted summary judgment in favor of Bear on the issue of attorney's fees under the Public Records Act.

The district court rejected the magistrate judge's conclusion on attorney's fees. Instead, the district court determined that Underhill should have known he was required to comply with the Public Records Act. "To the contrary," the district court held, "no reasonable uncertainty existed as to Underhill's status. As a Commissioner, he was a public official, a county authority, a member of the Board, and, as already determined 'a person acting on behalf of an agency' when he created public records on his social media pages, whether he was authorized by the Board to do so or not."

Underhill now appeals.  On appeal, he challenges the district court's determination that he qualified as an "agency" for purposes of Florida's Public Records Act and that he should be required to pay attorney's fees because he unlawfully withheld public records.

## II.    STANDARD OF REVIEW

This appeal concerns the district court's interpretation of Florida's Public Records Act.  We review de novo a district court's interpretation of a statute.  *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 586 (11th Cir. 2015).  We construe a Florida statute according to Florida's rules of statutory interpretation, not federal rules, when those rules differ.  *Id.*; *see also Belanger v. Salvation Army*, 556 F.3d 1153, 1155–57 (11th Cir. 2009).

## III.    DISCUSSION

This appeal poses three questions of how to interpret terms in Florida's Public Records Act.

The Florida Public Records Act requires "agencies" of the Florida government to produce the public records related to official business.  *See* Fla. Stat. § 119.011.

Underhill challenges the district court's interpretation of the statute on three grounds.  First, he argues that he does not qualify as an "agency" responsible for producing documents under the Act.  Second, he contends that the documents he was compelled to produce do not qualify as "public records."  Finally, he urges that he qualifies for an exception to the rule that an agency that is found

to have unlawfully withheld public records must pay attorneys' fees to the party seeking the records.

We address each of the three issues in turn.

A. *Commissioner Underhill qualifies as an "agency" under the Public Records Act.*

To determine whether Underhill qualifies as an agency, we begin with the text of the Public Records's Act definition of the term "agency." The Act defines the term as follows:

> "Agency" means any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law including, for the purposes of this chapter, the Commission on Ethics, the Public Service Commission, and the Office of Public Counsel, and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.

Fla. Stat. § 119.011(2).

The district court adopted the Report and Recommendation of the magistrate judge, holding that Underhill was an "agency" for public-records purposes. In reaching this conclusion, the district court determined that Underhill was a "person [. . .] acting on behalf of any public agency."

In its analysis, the district court applied the "scope of employment" test from *O'Boyle v. Town of Gulf Stream*, 257 So. 3d 1036 (Fla. 4th DCA 2018), and found that Underhill's communications were in furtherance of his work as a county commissioner. It held that "Underhill's interactions with the public on matters of County concern and involving his duties as a commissioner may be considered as actions on behalf of the agency and an integral part of the Board's decision-making process."

The district court also noted that Underhill was subjectively aware that he would have to maintain and potentially disclose records related to his communications with constituents. After all, Underhill conceded at a hearing that "it is part of his job as a county commissioner to communicate with constituents on matters of public concern" and that he used social media to carry out that responsibility.

We agree that the plain text of the statute and applicable Florida law support the district court's conclusion that Underhill qualifies as an agency.

First, we agree that Underhill was plainly acting "on behalf" of the Board when he communicated with constituents on county matters involving the Board that were to be voted on by the commissioners. The Board is an agency, and as the district court found, Underhill was acting on its behalf within the parameters of the scope-of-employment test that *O'Boyle v. Town of Gulf Stream*, 257 So. 3d 1036 (Fla. 4th DCA 2018), set forth.

On appeal, Underhill also argues that he can't be an agency because, as a county commissioner, he is not a county "officer." In support, he points us to section 1(d), Article VIII, of the Florida Constitution, which lists five types of county officers and does not mention county commissioners.

But several sections of the Florida statutes refer to county commissioners as "county officers." *See, e.g.*, Fla. Stat. §§ 145.011(1), 145.031(1) (stating "it is the intent of the Legislature to provide for the annual compensation and method of payment for the *several county officers* named herein" and then setting compensation for "[e]ach *member of the board of county commissioners*"). And at least one Florida District Court of Appeal has also held that the term "agency" includes a "municipal officer" such as a city commissioner. *City of Sunny Isles Beach v. Gatto*, 338 So. 3d 1045, 1048 (Fla. 3d DCA 2022).

Underhill next asserts that the phrase "or other separate unit of government" in the Public Records Act implies that the only entities that are "agencies" are those that qualify as "separate units of government." And while the category of "separate units of government" includes the County Commission, Underhill claims it doesn't include individual county commissioners.

Underhill is mistaken. In fact, the text of the statute explicitly states that "'[a]gency' means any state, county, district, authority, or municipal *officer*[.]" Fla. Stat. § 119.011(2) (emphasis added).

24-12285              Opinion of the Court              11

Underhill is a county commissioner. That means he is a county officer. So the Public Records Act applies to him.

Even if we adopted Underhill's interpretation of the statute (we don't), we would still agree with the district court that Underhill was operating his social media pages on behalf of a "separate unit of government" subject to the Public Records Act—namely, the Board. So the Act, which applies to any private person acting on behalf of an agency, applies to Underhill, anyway.

B. *The disputed documents are public records.*

The magistrate judge ordered Underhill to produce documents that fell into several categories, including (1) requests by constituents for Commissioner Underhill to take action or requests from Commissioner Underhill for a constituent to act; (2) general expressions of thanks; (3) requests for information about County matters from constituents and Commissioner Underhill's response; (4) expressions of disagreement or complaints by constituents about Commissioner Underhill's position on County matters; (5) Commissioner Underhill's positions and opinions, including disagreement with constituents, on matters involving the County that were to be decided by the County.

Underhill argued to the district court that none of his messages qualified as public records. The district court disagreed. It held that the messages met the "in connection with the transaction

of official business" prong of the Act's definition of "public records."[1]    That was so, the court determined, because Underhill made or received the messages in connection with official business, primarily focusing on the business of the Board.

The court relied on Underhill's acknowledgement "that he uses his Facebook pages to communicate with, educate, and inform constituents about matters impacting the County or actions taken by the Board because of his role as a commissioner." It reasoned that Underhill could not engage with the public "as a commissioner, with the authority and force of that public position" but then evade disclosure by claiming his messages were merely rogue, personal commentary.

The district court applied a case-by-case analysis of the 129 pages of public records it had access to. It considered the distinction that *Shevin v. Byron, Harless, Schaffer, Ried & Associates, Inc.*, 379 So. 2d 633, 640 (Fla. 1980), made. That distinction was between letters or memoranda transmitting "knowledge obtained in connection with the transaction of official business," which are public records, and drafts or hand-written notes for personal use, which are "mere precursors" to public records. *Id.* at 640–41. In the district court's view, the 129 pages matched the former category, so they were public records.

---

[1] The district judge agreed with Underhill that the messages weren't "created pursuant to a particular law or ordinance," so they didn't satisfy the other prong of the definition.

24-12285                Opinion of the Court                13

We agree with the district court's interpretation of the statute and its application of *Shevin*.

The definition of public records under the Act encompasses essentially any type of document "made or received pursuant to law or ordinance or in connection with the transaction of official business," Fla. Stat. § 119.011(12):

> "Public records" means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.

*Id.*

The Public Records Act guarantees a right to access public records made or received "in connection with the transaction of official business by any agency." *Id.* This language encompasses the messages that Underhill produced because, as we have discussed, Underhill qualifies as an "agency."

The documents at issue here also directly relate to Underhill's official business as a county commissioner. Indeed, the documents that the district court found that Underhill unlawfully withheld are Facebook messages between Underhill and constituents relating to Underhill's official public duties.

These documents are not internal notes or drafts of messages to constituents.  They are final communications from constituents to Underhill and from Underhill to constituents.  This makes them closer to the "letters" *Shevin* held to be public records, rather than the internal notes *Shevin* held to be mere precursors of public records not intended for communication.

These messages also explicitly concern Underhill's work for the Board.  For example, in one message, Underhill informed a Facebook user about his vote against "the budget" for the county.  In another conversation, Underhill explained to a supporter of the measure his rationale for voting "no" on investing in improvements to the local civic center.  In yet another, Underhill discussed a past vote on the "TPO" (presumably, this is a reference to the Florida-Alabama Transportation Planning Organization, on which all five Escambia County Commissioners sit) and sought to coordinate placing an item on the agenda of the body's next meeting.  These messages are connected to even the most restrictive definition of public bodies' "official business."

Underhill cites *Butler v. City of Hallandale Beach*, 63 So. 3d 278 (Fla. 3d DCA 2011), to argue that the challenged messages don't qualify as public records.  But *Butler* does not help Underhill.  There, a Florida court held that the blind-copy recipient list of an email that a mayor sent to friends and supporters did not qualify as a public record.  As the court explained, the email there was not made "in connection with the transaction of official business by the City." *Id*. at 281.  By contrast, here, Underhill used his platform in

his capacity as county commissioner to send and receive messages from constituents on county matters.

*Shevin* explicitly includes within "public records" any materials intended to "communicate . . . knowledge of some type" if they are "in connection with" official agency business. 379 So. 2d at 640. *Shevin* and the Florida Public Records Act require the conclusion that Underhill's messages with constituents qualify as "public records."

C. *Underhill's failure to produce records was an "unlawful refusal," sanctionable by attorney's fees.*

That brings us to whether Underhill's refusal to produce the records at issue in the case was "unlawful" and thus warranted the imposition of attorney's fees.

Under the Act, "[i]f a civil action is filed against an agency to enforce" the Act, the district court "shall assess and award the reasonable costs of enforcement, including reasonable attorney fees, against the responsible agency if the court determines that . . . [t]he agency unlawfully refused to permit a public record to be inspected or copied[.]"[2] Fla. Stat. § 119.12(1).

---

[2] The Act also requires the complainant to have provided written notice identifying the public-record request to the agency's custodian of public records at least five business days before filing the civil action. Fla. Stat. § 119.12(b). Underhill does not dispute that this requirement was met here.

The district court held that Underhill had "unlawfully refused" to produce the records the district court eventually compelled him to turn over. It correctly noted that the Florida Supreme Court in 2016 held that the unlawfulness condition requires simply that a public agency "violated a provision of the Public Records Act," with no requirement that it hadn't acted in good faith or reasonably. *Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 128 (Fla. 2016).

The district court also properly rejected Underhill's attempt to invoke the exception that *New York Times Co. v. PHH Mental Health Services., Inc.*, 616 So. 2d 27, 29 (Fla. 1993), established. The *PHH* exception bars an award of attorneys' fees based on "a private entity's reasonable uncertainty as to its status" as an agency. *Id.* at 30.

Here, the district court held that "no reasonable uncertainty existed as to Underhill's status" because, "[a]s a Commissioner, he was a public official, a county authority, a member of the Board and, as already determined, 'a person acting on behalf of an agency' when he created public records on his social media pages, whether he was authorized by the Board to do so or not." The court also noted Underhill's admission that his communications on social media "were in furtherance of his duties as Commissioner."

On appeal, Underhill argues that the magistrate judge's conclusion that reasonable uncertainty existed about Bear's status as

an "agency" shows that he should not be assessed attorney's fees. We disagree.

*PHH* tells us that to qualify for an exception to attorney's fees, a defendant (1) must have had reasonable and understandable "uncertainty as to its status as an agency" for purposes of the Act and (2) must have "acted quickly to clarify its status" under the Act, such as by filing a declaratory-judgment action. 616 So. 2d at 30.

As to the first prong, as we have explained, the statute and applicable caselaw tell us that county commissioners qualify as agencies subject to the Public Records Act. And again, Underhill testified that he was subjectively aware that the Public Records Act applied to him. He acknowledged that he has "an obligation to turn over public records when they're requested," regardless of whether they're stored on a personal device or a work device. It was simply not reasonable for him to believe that records of his official business from his social media accounts were not subject to disclosure under the Public Records Act.

As to the second prong, in any case, if Underhill was uncertain, he did not act swiftly to clarify his status. *See PHH*, 616 So. 2d at 30. Underhill does not argue that he took any action, like pursuing a declaratory judgment, to clarify whether he was an "agency" for purposes of the Act.

We therefore conclude that Underhill did not qualify for the *PHH* exception to attorney's fees awards. And we affirm the district court's imposition of attorney's fees.

## IV.    CONCLUSION

For the reasons we've explained, we affirm the district court's judgment in full.

**AFFIRMED.**